THE STATE OF IOWA, Appellant, v. B. F. SCHLENKER, Appellee.

**Criminal Law:** ADULTERATION OF MILK: *Constitutional law.* Code, section 4990, providing that "for the purposes of this chapter," imposing a penalty for selling adulterated milk, "the addition of water or any other substance or thing" to milk "is hereby declared an adulteration," is not unconstitutional, as invading the province of the judiciary.

SAME. Code, section 4989, declaring a fine for one who sells adulterated milk, does not contravene Constitution United States, Amendment 14; no restraints on the police power of the state for the protection of the safety, health, or morals of the community being imposed by such amendment.

POLICE POWERS. It is within the police power of the state to prohibit the sale of adulterated milk, though there be no fraud or

deceit in the sale, and the adulteration in certain cases be harmless.

ELEMENTS OF CRIME:   *Intent immaterial.*   No knowledge or intent being required by Code, section 4989, declaring a fine for one who sells adulterated milk, no criminal intent need be proved.

CONSTRUCTION OF STATUTE.   Code, section 4989, declaring that if any person shall sell any adulterated milk, he shall be fined, and section 4990, providing that for the purpose of this chapter the addition of water or any other substance or thing to milk is an adulteration, is to be construed literally, and not as merely prohibiting sales of something which operates as a fraud on the buyer or proves deleterious to his health.

*Appeal from Polk District Court.*—HON C. A. BISHOP, Judge.

SATURDAY, DECEMBER 22, 1900.

DEFENDANT was convicted of the crime of selling adulterated milk. His motion in arrest of judgment, based on the proposition that the statute is unconstitutional, was sustained, and he was released, and his bond exonerated. From this order the state appeals.—*Reversed.*

*Milton Remley,* Attorney General, and *Chas. A. Van Vleck,* Assistant Attorney General, for the State.

*W. N. Jordan* and *James C. Hume* for appellee.

DEEMER, J.—The statute under which the information was filed reads as follows: "If any person shall sell * * * any adulterated * * * milk * * * he shall be fined," etc. Section 4989. Section 4990 reads, "For the purpose of this chapter the addition of water or any other substance or thing, to whole milk or skimmed milk or partly skimmed milk, is hereby declared an adulteration," etc. There is no question that defendant sold milk to various persons into which he had put and mixed boracic acid. Some of them were notified of the adulteration,

but others were not. He testifies that he dissolved 5 pounds of the acid in 20 gallons of water, and added 1 pint of the solution to 10 gallons of milk; that he used it as a preservative, and told quite a number of his customers that he was using the solution for the purpose indicated; that he never attempted to deceive any of his customers regarding the use of the solution; and that its use was necessary "to keep the milk from souring." He also introduced experts to show that the quantity of boracic acid used tended to prevent decomposition, and would have no deleterious effect on the consumers. For the purpose of the case, we must assume that the quantity of acid used by the defendant in the milk sold by him had no deleterious effect, but tended to prevent decomposition and the development of germs. The experts also testified, however, that the addition of an excessive amount of boracic acid would have a deleterious effect, in that it would retard the formation of gastric juice in the stomach. The learned district judge filed an opinion in which he held, in effect, that the statute, construed literally, was unconstitutional, and that the evident intent of the legislature was to prohibit sales of anything that would operate as a fraud upon the buyer or prove deleterious to his health, and that, as the defendant was guilty of no fraud and the adulteration was harmless, he had not violated the law. These propositions are insisted upon by the appellee, and further contention is made that if the statute is not so construed it is unconstitutional, for various reasons, that will be referred to during the course of the opinion. It seems to us that the construction placed on the statute by the trial court is a strained and unnatural one. The language of the enactment is plain, and in view of previous legislation there is no doubt that the act should have a literal interpretation. That the legislature so intended is not open to serious debate. So construed, are the acts in question constitutional?

Section 4990 is said to be void because it invades the judicial province, in that it is not permissible for the legislature to make certain evidence conclusive of a question that may be submitted to judicial determination. No doubt, the legislature cannot indirectly dispose of a cause by prescribing conclusive rules of evidence, and it has no power to direct the judiciary in the interpretation of existing statutes. *Groesbeck v. Seeley,* 13 Mich. 329; *Johns v. State,* 55 Md. 362; *Reiser v. Association,* 39 Pa. St. 137; *Salters v. Tobias,* 3 Paige, 338. But it does have power to prescribe legal definitions of its own language, and, when an act passed by it embodies a definition, it is binding on the courts. *Smith v. State,* 28 Ind. 321; *Jones v. Surprise,* 64 N. H. 243 (9 Atl. Rep. 384); *Byrd v. State,* 57 Miss. 243 (34 Am. Rep. 440); *Herold v. State,* 21 Neb. 50 (31 N. W. Rep. 258); *Clay v. Railroad Co.,* 84 Ga. 345 (10 S. E. Rep. 967); *People v. Board of Supervisors of New York City,* 16 N. Y. 424. Even declaratory statutes are entitled to respectful consideration by the courts, although not always binding. Cooley Statutory Crimes (2d ed.) section 91; *People v. Board of Supervisors of New York City, supra; Lambertson v. Hogan,* 2 Pa. St. 25. The definition given by the legislature in section 4990 of the Code as to the term "adulteration" is valid and binding. Such legislation does not trench on the powers of the judiciary, and is not invalid for the reason suggested.

But it is said that the legislature had no power to forbid the sale, without deceit or fraud, of a harmless and wholesome article of food. This may be true, as a general proposition; but it is also true that in virtue of the police power it may pass such laws as are, or may reasonably appear to be, necessary for the health, comfort, and safety of the people. No clear and comprehensive definition of the police power has ever been given, and it is doubtful if one can be framed that will be accurate and cover every con-

ceivable case that may arise. It is much easier to determine whether the particular case comes within the scope of the power, than to give a definition that will be applicable to all cases. In *Railroad Co. v. Husen,* 95 U. S. 465 (24 L. Ed. 527), it is said, "The police power of a state extends to the protection of the lives, limbs, health, comfort, and quiet of all persons, and to the protection of all property within the state, and hence to the making of all regulations promotive of domestic order, morals, health, and safety." The power belongs to the several states, and not to the federal government, save in exceptional cases; and, so· long as the legislature does not pass the limits prescribed by the federal or state constitutions, courts have no authority to interfere on the ground that the acts in question violate natural principles of right and justice. Ordinarily the legislature determines when the public welfare and safety demand its exercise; and, as a general rule, courts have nothing to do with the policy, wisdom, or necessity of the enactment. Of course, the state cannot, by arbitrarily assuming that a commodity is injurious to the health or comfort of the people, impair individual rights guaranteed by the constitution. The police power of the state, like every other, is subject to the constitution, and cannot be used as a cloak under which to disregard constitutional rights or restrictions. *Railroad Co. v. Husen, supra; In re Jacobs,* 98 N. Y. 98. The question is, of necessity, primarily with the legislature, and its decision should not be lightly disregarded by the courts. Courts will not interfere, as a rule, unless there is a plain excess or usurpation of power, and in case of doubt it should be solved in favor of the power of the legislature to make the enactment. It was an indictable offense at common law to mix unwholesome ingredients, such as alum, in bread, or to mix unwholesome substances in anything intended for the food of man. There is an ancient statute (Statutes 51 Henry III.) prohibiting the sale of corrupted wine, contagious or unwholesome flesh, or flesh

that is bought of a *Jew*.  4 Blackstone Commentaries 162.
In *Rex v. Dixon*, 3 Maule & S. 11, defendant was indicted
for furnishing bread not fit for food.  It appeared that the
loaves were strongly impregnated with alum, and that large
pieces of crude alum were found in them.  Defendant's mo-
tion for a new trial, filed after a verdict of guilty, was over-
ruled; the court saying that "alum being perilous to health,
in the form used, it is immaterial that if used in certain
quantities it was not noxious, but wholesome."  Statutes
enacted to secure the sale of pure food and to prevent adulter-
ation are quite common in this country, and have ever been
referred to the police power.  See English sale of food and
drugs act of 1875 (chapter 63); Laws Tenn. 1859-60, chap-
ter 81, section 4; Revised Statutes Mass. chapter 131, section
1.  They are enacted to prevent fraud and to conserve the
public health, and as such are a valid exercise of the police
power.  *State v. Campbell*, 64 N. H. 492 (13 Atl. Rep.
585; *People v. Arensburg*, 105 N. Y. 123 (11 N. E. Rep.
277); *Butler v. Chambers*, 36 Minn. 69 (30 N. W. Rep.
308; *Waterbury v. Newton*, 50 N. J. Law, 534 (14 Atl. Rep.
604); *Powell v. Pennsylvania*, 127 U. S. 679 (8 Sup. Ct.
Rep. 992, 1257, 32 L. Ed. 253); *Com. v. Waile*, 11 Allen,
264 (87 Am. Dec. 711); *State v. Smythe*, 14 R. I. 100 (51
Am. Dec. 343); *People v. Cipperly*, 101 N. Y. 634 (4 N. E.
Rep. 107); *Com. v. Gordon*, 159 Mass. 8 (33 N. E. Rep.
709); *Com. v. Schaffner*, 146 Mass. 512 (16 N. E. Rep.
280).

That the sale of milk to which water and boracic acid
have been added may amount to a fraud upon the purchaser
is evident.  He has the right to assume that the milk he buys
is unadulterated, and that it will go through the natural pro-
cess of oxidation and decomposition.  He may wish to use
sour milk for culinary purposes, and has the right to assume
that nothing has been added to prevent chemical change.
Counsel for appellee responds to this thought by saying that

defendant notified all persons to whom he sold that boracic
acid had been added, and that no one of the witnesses for the
state was deceived. The record does not bear them out in this
contention, but, even if it did, we would have no help there-
from in solving the constitutional question involved. It may
be conceded that the milk sold by defendant was not harmful
to the health of those who used it; but it is certainly danger-
ous to the public to permit milkmen and those dealing in
milk to adulterate it in such manner as to change its constit-
uent properties. The statute does not deprive the defendant
of his property, but it does impose upon him the duty of so
using it that no injury will result to others, most likely to
be affected by a disregard on his part of the reasonable health
regulations that it enacts. Almost every police regulation af-
fects, to a greater or less extent, some property right; but
these rights are subject to such reasonable limitations in their
enjoyment as will prevent them from being injurious, and to
such reasonable regulations as the legislature, under the con-
stitution, may deem necessary and expedient. In the
*Schaffer Case,* from Massachusetts, and the *Campbell Case,*
from New Hampshire, it is expressly held to be immaterial
whether the foreign matter is or is not injurious to health.
The court in the latter case said that, "if the legislature has
power to fix a standard, it must judge whether or not milk
below that standard is unwholesome;" and in the former it
was held that the addition of pure water to milk was an adul-
teration punishable under the statute. In *Com. v. Gordon,
supra,* it is expressly held that the addition of boracic acid
to cream is an offense under the statute of the state of Massa-
chusetts. See, also, *Com. v. Wetherbee,* 153 Mass. 159 (26
N. E. Rep. 414). In *Com. v. Waite,* 11 Allen, 264 (87 Am.
Dec. 711), the exact question made by defendant in this case
was decided, the court using the following language: "It is
innocent and lawful to sell pure milk, and it is innocent and
lawful to sell pure water; and the argument is that the legis-

lature has no power to make the sale of milk and water when mixed a penal offense, unless it be done with a fraudulent. intent. But it is notorious that the sale of milk adulterated with water is extensively practiced with fraudulent intent. It is for the legislature to judge what reasonable laws ought to be enacted to protect the people against this fraud, and to adapt the protection to the nature of the case. They have seen fit to require that every man who sells milk shall take the risk of selling a pure article. No man is obliged to go into the business, and by using proper precautions any dealer can ascertain whether the milk he offers for sale has been watered. The court can see no ground for pronouncing the law unreasonable, and has no authority to judge as to its expediency." It is not enough to show that defendant did not intend to defraud, or that the milk he sold was wholesome. If that were true, almost any law intended to protect the public health and safety might be overthrown. It is enough that adulteration such as prescribed by the statute may defraud or prove deleterious to the public health or comfort. The legislature may well determine that the adulteration of milk tends to facilitate vicious practices, and that it ought to be prohibited. To defeat the act prohibiting such conduct, it is. not enough to show that in the particular case the article sold was innocuous. Criminal intent is not an essential element of the offense described in the statute, and need not be shown in order to justify a conviction. *Com. v. Smith,* 103 Mass. 444; *Com. v. Farren,* 9 Allen, 489; *Com. v. Nichols,* 10 Allen, 199; *People v. Kibler,* 106 N. Y. 321 (12 N. E. Rep. 795); *State v. Smith,* 10 R. I. 258. If the statute required knowledge or intent, of course these matters should be shown. These propositions are a sufficient answer to the opinion of the trial court, holding that an intent to defraud is necessary.

Appellee further contends that the statute in question is in violation of the fourteenth amendment to the federal con-

stitution. Such contention is not sound, for it is funda-
amental that this amendment does not impose any
restraints on the exercise of the police power of the
state for the protection of the safety, health, or
morals of the community. *Barbler v. Connoly,* 113 U. S. 27
(5 Sup. Ct. Rep. 371, 28 L. Ed. 923) ; *Kidd v. Pearson,* 128
U. S. 1 (9 Sup. Ct. Rep. 6, 32 L. Ed. 346) ; *In re Rahrer,*
140 U. S. 545 (11 Sup. Ct Rep. 865, 35 L. Ed. 572) ; *Peo-
ple v. King,* 110 N. Y. 418 (18 N. E. Rep. 245). The con-
·clusion of the learned trial judge was made to depend almost
wholly on the facts developed by the evidence. If the jury
had found the milk as adulterated,—unwholesome,—we have
no doubt that the trial court would have sustained the con-
victions. That the constitutionality of a statute ought not
to· be made to depend on the finding of a jury on the facts of
.a case is manifest. If the plain provisions of the constitution
have been violated, or if the act cannot be said to be a proper
·exercise of the police power, in view of facts of which judicial
notice may be taken, then the duty of declaring the act in-
valid is clear. But, in the absence of such finding, the act
should stand. Ordinarily it cannot, we think, be a question
·of fact for a jury. See *People v. Cipperly, supra; People v.
.Smith,* 108 Mich. 527 (66 N. W. Rep. 382). *People v.
Marx,* 99 N. Y. 377 (2 N. E. Rep. 29), is relied on by appel-
lee. That case involved the right to sell oleomargarine, and
not the question of adulteration. That it is not in conflict
·with anything we have announced clearly appears from the
·*Cipperly Case,* in 101 N. Y. 634 (4 N. E. Rep. 107). See,
also, *People v. Arensburg,* 103 N. Y. 388 (8 N. E. Rep.
·736). *Schollenberger v. Pennsylvania,* 171 U. S. 1 (18 Sup.
Ct. Rep. 757, 43 L. Ed. 49), involved the commerce clause
·of the federal constitution; and it was held that the legisla-
·ture could not, under the guise of the police power, absolutely
prohibit the sale of articles which are the subjects of inter-
.state commerce. It does not overrule *Powell v. Pennsyl-*

*vania,* 127 U. S. 678 (8 Sup. Ct. Rep. 992, 1257, 32 L. Ed. 253), or *Plumley v. Massachusetts,* 155 U. S. 461 (15 Sup. Ct. Rep. 154, 39 L. Ed. 223), and, as those cases sustain our holding, we may well rest thereon.

Lastly, it is said that section 4990 of the Code is void because the subject is not expressed in the title. The act is found in the Code of 1897. Whether or not it existed prior to that time is immaterial to our present inquiry. Some claim is made that the title of the act adopting the Code, and particularly that part of it under consideration, is insufficient. Our attention has not been called to any defects in the enactment of the Code, either as a whole, or by titles and chapters; and in the absence of such a showing, and of the most cogent arguments in support of the claim, we are not justified in holding that either the Code or any section or chapter thereof is void because of the constitutional provision defining what shall be embraced in the title of an act. The title to the original act was sufficiently specific. *State v. Forkner,* 94 Iowa, 1; *State v. Snow,* 81 Iowa, 642; *Christie v. Investment Co.,* 82 Iowa, 360.

We have covered all points made in argument, and reach the conclusion that the trial court was in error in his conclusions of law; and we therefore reverse the same, to the end that the proper rule may be established for such cases.— REVERSED.