J. G. CRAVEN, Appellant, v. WALTER L. BIERRING, Commissioner of Public Health, et al., Appellees.

No. 43662.

614

NOVEMBER 17, 1936.

Dwight S. James, for appellant.

Edward L. O'Connor, Attorney General, Harry F. Garrett, Assistant Attorney General, and Donald D. Holdoegel, for appellee, Walter L. Bierring, Commissioner of Public Health.

Harry F. Garrett, Assistant Attorney General, for appellee, Edward L. O'Connor, Attorney General.

Carl A. Burkman, County Attorney, pro se, and for appellee, Charles F. Keeling, Sheriff.

F. T. Van Liew, City Solicitor, C. I. McNutt and Chauncey A. Weaver, Assistant City Solicitors, for appellee, Henry A. Alber, Chief of Police.

HAMILTON, J.—Plaintiff-appellant has been engaged in the practice of dentistry since 1906. The last ten years he has confined his practice to plate work only. He owns and maintains a chain of five dental offices in Iowa. It has been his practice to advertise extensively through the newspapers by means of narratives or short stories extolling the superiority of his work, illus-

trating his advertisement with a photograph or cut of his plate work. Special sales were featured and special prices quoted. Attractive signs were used at his several offices. Each office was in charge of a regular licensed dentist and a laboratory technician. In connection with his practice his several offices were furnished with equipment valued at approximately $10,000. By this means he had acquired a large practice and established a substantial business.

In May, 1935, the legislature enacted a law placing more stringent limitations on advertising by those engaged in the practice of dentistry and dental hygiene in this state. Chapter 24, Acts of the 46th General Assembly, now contained in Chapter 121, Title VIII, Code of Iowa, 1935, and more particularly section 2573-g16 of said Code defines "Unprofessional conduct". This section reads as follows:

"2573-g16. As to dentists and dental hygienists 'unprofessional conduct' shall consist of any of the acts denominated as such elsewhere in this title, and also any other of the following acts:

"1. All advertising of any kind or character other than the carrying or publishing of a professional card or the display of a window or street sign at the licensee's place of business; which professional card or window or street sign shall display only the name, address, profession, office hours and telephone connections of the licensee.

"2. Exploiting or advertising through the press, on the radio, or by the use of handbills, circulars or periodicals, other than professional cards stating only the name, address, profession, office hours and telephone connections of the licensee.

"3. Employing or making use of advertising solicitors or publicity agents or soliciting employment personally or by representative."

Acts of misconduct mentioned in the last section as being found "elsewhere in this title" are not involved in this contest. It is the limitation placed on advertising that raises the serious question which we are called upon to determine.

After the passage of this act, plaintiff contacted H. B. Carlson, Attorney, Director of Investigation of the State Department of Health, and was told by him that he would have to comply with this law or subject himself to the penalties which the statute

provided. In October, 1935, plaintiff brought this suit in equity, attacking the law on constitutional grounds, alleging that as a result of said law and the impending threats, he was precluded from advertising, and as a consequence has lost substantial sums in his practice, and if forced to abide by this law, will suffer irreparable injury and damage; that much of his valuable office equipment will be rendered worthless, for the recovery of which he is afforded no adequate remedy at law; that he will be deprived of liberty and property without due process of law; that the limitation upon the scope of advertising is unreasonable, arbitrary, whimsical and capricious and has no fair or reasonable relationship to the protection of the public health, safety, morals, or general welfare of the people of this state; that it unnecessarily, unjustifiably and illegally restrains and prevents freedom of speech, is indefinite, ambiguous, and uncertain in its terms, is an invalid exercise of the police power, and is class legislation, discriminatory in character as against those engaged in the practice of dentistry, granting unto others privileges and immunities not granted to plaintiff, all in violation of sections 1, 6, 7, and 9, Article I, and section 9, Article III, of the Constitution of Iowa, and the Fifth and Fourteenth Amendments to the Constitution of the United States; that said law constitutes an unreasonable restraint of trade, and illegally impairs and abridges, and is in derogation of plaintiff's right of contract and violative of sections 9 and 21, Article I, of the State Constitution, and the Fifth and Fourteenth Amendments to the Federal Constitution; also that Rules 25, 26, 27 and 28 of the Department of Health are unintelligible and confusing, arbitrary and unreasonable, and have no fair or reasonable relationship to the protection of the health; that the state had no authority to delegate power to promulgate such rules to the State Department of Health, and said rules constitute a usurpation of legislative authority and are void, and in contravention of sections 1, 6, 7, and 9 of Article I and section 1, Article III of the State Constitution and the aforesaid Fifth and Fourteenth Amendments to the Federal Constitution; that section 1 of chapter 24, Acts of the 46th General Assembly is unconstitutional and void, in that it attempts to repeal section 2448 of the 1931 Code of Iowa, and there is no proper mention of this in the title to the act, and that said act contains more than one subject and which subject is not expressed in the title to said act, as required by section 29,

Article III, of the Constitution of the State of Iowa; and praying that said law and rules be held unconstitutional and void as violating the aforesaid provisions of the State and Federal Constitutions; that an injunction issue restraining the defendants from enforcing said law and rules, and for general equitable relief. Separate answers were filed, denying generally the allegations of petition.

Statutes regulating the practice of medicine clearly fall within the police power of the state, Smith v. Medical Examiners, 140 Iowa 66, 117 N. W. 1116. The practice of dentistry naturally falls under the same rule of law. Concerning constitutional limitations as affecting the exercise of police power of the state, this court said (Fevold v. Board of Supervisors, 202 Iowa 1019, 1026, 210 N. W. 139, 142):

"Neither the Fourteenth Amendment nor any other amendment was designed to interfere with the police power of the state to prescribe regulations to promote health, peace, morals, education, and good order of the people."

This court also said (Peverill v. Board of Supervisors, 208 Iowa 94, at pages 115, 116, 222 N. W. 535, 545):

"The due process rule is not a limitation upon the right of the state to exercise its police power unless the attempted exercise of such power is arbitrary or unreasonable or an improper use of such power."

"Police power is constantly exercised by the state; yet a definition of such power has never been definitely and precisely formulated. In fact, public policy rather demands that there be no specific definition. See Stettler v. O'Hara, 69 Ore. 519, 139 Pac. 743, L. R. A. 1917C, 944, Ann. Cas. 1916A, 217. Each case as it arises must be determined according to its own facts. State v. Schlenker, 112 Iowa 642, 84 N. W. 698, 51 L. R. A. 347, 84 Am. St. Rep. 360." Loftus v. Dept. of Agriculture, 211 Iowa 566, 571, 232 N. W. 412, 415.

In State v. Hanson, 201 Iowa 579, at page 584, 207 N. W. 769, 771, this court said:

"The delegation by the legislature to inferior tribunals of authority to revoke certificates or licenses to practice medicine has been uniformly sustained by the courts of this country, as

within the police power. Green v. Blanchard, 138 Ark. 137, 211 S. W. 375, 5 A. L. R. 84; Smith v. State Board of Medical Examiners, 140 Iowa 66, 117 N. W. 1116; Thompson v. State Board of Medical Examiners, 59 Colo. 549, 151 Pac. 436; Indiana Board of Pharmacy v. Haag, 184 Ind. 333, 111 N. E. 178. The function of the board in the proceedings under the statute is ministerial or quasi judicial. Smith v. State Board of Medical Examiners, supra; Traer v. State Board of Medical Examiners, 106 Iowa 559, [76 N. W. 833]. * * * Due process of law requires only that the proceedings shall be uniform and regular, and that notice be given the accused, together with opportunity to be heard. Smith v. State Board of Medical Examiners, supra; Louisville & N. R. Co. v. Schmidt, 177 U. S. 230, 20 S. Ct. 620, 44 L. Ed. 747.''

 The possession by the plaintiff of a certificate to practice the profession of dentistry is a valuable right which cannot be taken away without due process of law. Smith v. Medical Examiners, supra. The constitutional requirement of due process, the essential elements of which are notice and an opportunity to be heard, is not invaded where the statute provides for notice and hearing before a legally constituted tribunal, with a right of appeal to the court. The statutes of this state, relating to revocation of licenses or refusal to renew the license of one engaged in the practice of dentistry, make ample provision for notice and hearing. In this state two methods are provided by which one who is already the holder of a license to practice dentistry may be deprived of such privilege: (1) By direct action in the district court of the county in which the licensee resides to revoke the same, based upon certain grounds enumerated in the statute. See section 2492 et seq. of the Code of Iowa, 1935. This procedure applies to all the basic sciences, including dentistry, and is not challenged in this suit. (2) The second method has reference to the procedure by which the commissioner of the State Department of Health may refuse to renew such license. It will require but a casual reading of the provisions of this amendment dealing with the practice of dentistry and dental hygiene to disclose that ample provision has been made for notice and hearing and for appeal to the court. On appeal the case is triable *de novo,* thereby in every respect meeting the requirements of due process. See Code section 2573-g2 et seq.

■■■ Appellant contends that there is a third method by which he may be deprived of his license without a hearing of any kind, which is found in section 2441 of the 1935 Code, which reads as follows:

"The department may refuse to grant a license to practice a profession to any person otherwise qualified upon any of the grounds for which a license may be revoked by the district court."

This statute, in substance, was included in the Code of 1897. It must be construed with the other provisions of the law contained in Title VIII of the Code which have been more recently enacted, and when this is done, section 2441 must be held to apply to the granting of a license to practice dentistry in the first instance, and since the plaintiff is now the holder of a license duly and legally issued, he is not concerned with this section of the Code. Unless he has violated some of the provisions of the statute applicable to his profession, he is entitled to a renewal of his license as a matter of right, by complying with sections 2573-g2, 2573-g3, 2573-g4 of the Code of 1935. Manifestly, if, after a hearing in either of the two above mentioned statutory methods, one's license has been revoked or it has been found and determined that the holder of such license is not entitled to have the same renewed, it would amount to a judicial determination that he was not entitled to the possession of a license to practice his profession, and if thereafter he seeks re-admission or re-instatement, it would be a matter within the sound discretion of the State Department of Health whether he is again granted a license to practice his profession, and under section 2441, a license might then be refused upon any of the grounds for which a license may be revoked by the district court. Provision is made in chapter 121, Title VIII of the 1935 Code, relating to the practice of dentistry, for re-instatement of a former licensee whose application for renewal of license has been rejected by the commissioner, and who has not successfully prosecuted an appeal therefrom, and also for re-instatement of a lapsed license, where any former licensee has allowed his license to lapse by failing to file application for renewal of the same. See sections 2573-g13 and 2573-g14 of the Code, 1935.

There is no merit in appellant's contention that chapter 24, Acts of the 46th General Assembly, attempts to repeal section

2448, Code of 1931, and in the title to the act this section is not mentioned. The amendment which affected section 2448 was in fact attached to section 2447 and section 2447 is mentioned in the title to the act. Neither is appellant entitled to complain on the ground of class legislation, or that the act is in derogation of plaintiff's right of contract. Both of these questions were involved in the recent case of Semler v. Oregon State Board of Dental Examiners, et al., 148 Or. 50, 34 Pac. (2d) 311, 313, and the law was upheld by the Oregon court and on appeal to the United States Supreme Court (294 U. S. 608, 55 S. Ct. 570, 572, 79 L. Ed. 1086) was likewise upheld by this court. Hence, there is no basis for appellant's charge of unconstitutionality on either of these grounds. See also, Priest v. Whitney Loan & Trust Company, 219 Iowa 1281, 261 N. W. 374.

■■■ There is but one constitutional question of sufficient merit to warrant our serious consideration, namely, whether or not the limitations upon advertising are so arbitrary and unreasonable as to constitute an unlawful restraint and infringement and interference with the plaintiff's inherent right to carry on a lawful vocation. We do not understand that appellant questions the right of the state, under the police power, to reasonably regulate the practice of dentistry; but appellant strenuously contends that such legislation must bear a fair relation to the public health, morals, safety or general welfare of the people, and he contends that so long as there is nothing untruthful in the advertising matter, that the public welfare is not affected adversely.

The burden of proof is upon the appellant to show that the act of the legislature in question violates some of the constitutional provisions relied upon by him. This proof must be clear and satisfactory. All presumptions are in favor of its constitutionality, and a statute will not be held unconstitutional unless its contravention of constitutional guaranties is so clear, plain and palpable as to leave no reasonable doubt on the subject, and where the language is reasonably susceptible of different meanings, the courts will lean to that construction which is consistent with its validity. City of Des Moines v. Manhattan Oil Company, 193 Iowa 1096, 184 N. W. 823, 188 N. W. 921, 23 A. L. R. 1322; State v. Manning, 220 Iowa 525, 259 N. W. 213; Priest v. Whitney Loan & Trust Company, supra, at page 1286; Loftus v. Department of Agriculture, supra.

We have given careful consideration to this phase of the matter and have carefully read and considered all the authorities cited, and we are satisfied that the weight of modern authority is against the appellant's contention. The most conclusive answer to all of plaintiff's contentions is found in the opinion of Justice Hughes of the United States Supreme Court, recently handed down in the Oregon case, Semler v. Oregon State Board of Dental Examiners, supra. It is true that the Oregon statute is not in the same language, but it does strike at the same evil as the Iowa statute. The Oregon statute undertakes to limit advertising by specifically barring all advertising methods enumerated, which include practically every means by which a dentist could publicize his business, except by professional card, or ordinary window or street sign. The Iowa statute takes the other way around and bars all advertising except those methods specified in the statute. This Oregon statute was attacked on the very grounds that appellant has raised in this case, and special consideration was given to the question of truthful advertising and in respect to this matter the opinion of the United States Court states:

"Recognizing state power as to such matters, appellant insists that the statute in question goes too far because it prohibits advertising of the described character, although it may be truthful. He contends that the superiority he advertises exists in fact, that by his methods he is able to offer low prices and to render a beneficial public service contributing to the comfort and happiness of a large number of persons.

"The state court defined the policy of the statute. The court said that while, in itself, there was nothing harmful in merely advertising prices for dental work or in displaying glaring signs illustrating teeth and bridge work, it could not be doubted that practitioners who were not willing to abide by the ethics of their profession often resorted to such advertising methods 'to lure the credulous and ignorant members of the public to their offices for the purpose of fleecing them.' The legislature was aiming at 'bait advertising.' 'Inducing patronage,' said the court, 'by representations of "painless dentistry," "professional superiority," "free examinations," and "guaranteed" dental work' was, as a general rule, 'the practice of the charlatan and the quack to entice the public.'

"We do not doubt the authority of the State to estimate the baleful effects of such methods and to put a stop to them. The legislature was not dealing with traders in commodities, but with the vital interest of public health, and with a profession treating bodily ills and demanding different standards of conduct from those which are traditional in the competition of the market place."

The Dental Practice Act of Illinois (Smith-Hurd Ill. Stats. ch. 91, section 72b) is more rigid and exacting with reference to advertising than the Iowa law and in the case of Winberry v. Hallihan, 361 Ill. 121, 197 N. E. 552, 555, the supreme court of Illinois sustained the law. The Illinois statute limited the size of a professional card and the height of the letters on the window card. It is a well-considered case, and follows the reasoning of the Oregon case and distinguishes the holding in these modern cases from some of the older cases relied upon by appellant. We quote with approval the following from said case:

"The question is presented whether the size, style, and manner of dental advertising and advertising prices bear such a relation to the public health as to justify legislative control through the police power. That power has repeatedly been held to include detailed regulation of surgery, medicine, and dentistry. Dent. v. West Virginia, 129 U. S. 114, 9 S. Ct. 231, 32 L. Ed. 623; Hawker v. New York, 170 U. S. 189, 192, 18 S. Ct. 573, 42 L. Ed. 1002; Reetz v. Michigan, 188 U. S. 505, 23 S. Ct. 390, 47 L. Ed. 563; Douglas v. Noble, 261 U. S. 165, 43 S. Ct. 303, 67 L. Ed. 590; People v. Witte, 315 Ill. 282, 146 N. E. 178, 37 A. L. R. 672; People v. Walsh, 346 Ill. 52, 178 N. E. 343. The practice of professions has generally been held to be subject to licensing and to regulation under the police power. Professions are not subject to commercialization or exploitation. People v. People's Stock Yards State Bank, 344 Ill. 462, 176 N. E. 901; Painless Parker v. Board of Dental Examiners, 216 Cal. 285, 14 P. (2d) 67. The argument that this legislation nullifies a right to pursue a trade or calling is unsound, because appellants have failed to distinguish between a trade and a profession. The advertising restrictions contained in this act bear a direct relation to public health and are well calculated to protect it. They are therefore within the legislative power to proscribe and prohibit."

The state of Washington has a statute very similar to our own which specifically mentions certain kinds of advertising that may be done and prohibits all other kinds in a law regulating the practice of osteopathy, and the constitutionality of this law was challenged and upheld in the case of Laughney v. Maybury, 145 Wash. 146, 259 P. 17, 54 A. L. R. 393, and the following pertinent language was used by the Supreme Court of Washington:

"We have no doubt that the regulation or prohibition was in response to the prevailing opinion and demands of the public, including the vast majority or nearly all of the osteopathic physicians and surgeons themselves, and that the legislature so understood it, not simply from the standpoint of professional ethics as argued on behalf of the appellant, but as suited and necessary for the common welfare. The view of the legislature as to the facts and necessity for the regulation we will not review or question. * * *

" 'It may be stated generally that any one has a right to pursue any lawful calling, yet, in respect to certain vocations not in themselves unlawful, including the practice of medicine and surgery, the right is necessarily and properly subject to legislative restrictions or regulations from consideration of public policy.' "

Wisconsin also has a similar statute which was upheld by the Supreme Court of that state in the case of Modern System Dentists v. State Board of Dental Examiners of Wisconsin, 216 Wis. 190, 256 N. W. 922. The Wisconsin court correctly says that "such statutes are not passed for the purpose of promoting the personal ends of individuals, but are statutory enactments in the exercise of the police power of the state to legislate for the safety, health, and welfare of the people." Rust v. State Board of Dental Examiners, 216 Wis. 127, 256 N. W. 919, 921; Ex Parte Whitley, 144 Cal. 167, 77 P. 879, 1 Ann. Cas. 13. See, also, Thompson v. Van Lear, 77 Ark. 506, 92 S. W. 773, 5 L. R. A. (N. S.) 588, 7 Ann. Cas. 154.

Appellant also argues that in an attempt to regulate the practice of dentistry, which is a lawful vocation, the legislature is destroying the plaintiff's right to practice the same. The weakness of this contention is found in the undoubted fact that these laws restricting advertising have the sanction of the dental

profession as a whole. They are intended to preserve the profession, not to destroy it. Such laws are not enacted for the benefit of any class of individuals, but in the interest of the general public. In the sense that they tend to prevent an unseemly rivalry in a race for business, and preserve a rational, reasonable and ethical approach to the public and aid the profession in maintaining its service upon a high plane of efficiency, such laws may be said to be beneficial to the profession as a whole; but this is not the primary purpose of the law. It is but one of the beneficial and beneficent fruits of the law. By making unlawful all methods of advertising calculated to bait or allure the public, the quack, the charlatan and exploiter are deprived of any means of plying their art. Likewise, the member of the profession who would seek to commercialize the same by boosting himself through extensive use of methods of publicity, extolling the superiority of his services, thereby forcing his competitors into a race for business, to the demoralization of the high standards and established ethics of the profession—all of which worketh ill to the public—is successfully thwarted in his purpose. It is quite true that the authorities are not uniform in relation to this matter of truthful advertising, and many of the earlier cases may be cited to the effect that legislation of this character can only be directed toward eliminating advertising which is false and fraudulent, and intended to deceive the public. More recent cases seem to go deeper into the philosophy and purpose of such legislation. Justice Hughes in his opinion in the Oregon case hereinbefore referred to, calls attention to the fact that:

"The community is concerned with the maintenance of professional standards which will insure not only competency in individual practitioners, but protection against those who would prey upon a public peculiarly susceptible to imposition through alluring promises of physical relief. And the community is concerned in providing safeguards not only against deception, but against practices which would tend to demoralize the profession by forcing its members into an unseemly rivalry which would enlarge the opportunities of the least scrupulous. What is generally called the 'ethics' of the profession is but the consensus of expert opinion as to the necessity of such standards."

The experience of mankind has shown that human greed and avarice, untrammeled and uncontrolled by law, will not

hesitate to prey upon the frailties of over-credulous human beings. Those affected by real or imaginary ills are an easy prey and the unscrupulous as well as some of the more honorable but avaricious members of the profession, in disregard of the ethics of their profession, are many times overcome by the great temptation to become rich at the expense of humanity, with all its afflictions, and such have resorted to all the devices of the faker on the street corner and the skillful artisan of expert advertising and radio propaganda, some even going beyond the borders of the United States with their broadcasting stations, where they may exploit their victims without hindrance. Such methods are demoralizing to the profession and detrimental to society. The underlying purpose of legislation of this character is not especially aimed at the honest and honorable member of the profession who might be prone to use unethical means of calling attention to his superiority and indulge in what is referred to in some of the cases as "bait" advertising, truthful in itself. The object and aim of the statute is to strike at the charlatan and unscrupulous practitioner who makes use of the same or similar methods to entice and allure an unsuspecting and credulous public and by means of which they become victims of his quackery. Obviously, no legislation can be upheld which would apply alone to the quack, but such legislation must be general in its application and rest alike upon all members of the profession concerned, and it is the general aspect of the practice that must be dealt with. And if legislation of this kind, limiting the character and methods of advertising by members of the dental profession, becomes necessary to reach the unscrupulous in the interest of the public welfare—*and this is a matter for the legislature to determine*—the adoption by the legislature of such rules and regulations does not invade or contravene the constitutional rights of the plaintiff, even though in particular instances some practitioner, like the plaintiff, may have been actuated by honest motives and no actual deception was used or misstatements made. The best interests of the public demand that members of a profession affecting the public health stand or fall on the merits of their services, and not on their skill in advertising.

Many laws intended to protect the public generally appear to, and in fact do, place unnecessary restraints upon the acts and conduct of men of honest motives and purposes. Pure food and drug acts and bulk sales acts almost universally adopted by

the states prohibit the doing of things harmless in themselves in order to close the door against the commission of fraud, and such laws have been sustained as a valid exercise of the police power of the state. These laws are made necessary because there are those in society who must be restrained. Likewise, in our judicial procedure we find limitations and restrictions in regard to the methods of proof, such as the statute of frauds, and the commonly called "dead man's" statute, intended to shield the public against the perpetration of fraud. Quite often these limitations prevent the introduction of actual truth. These laws and regulations are deemed essential because without them the opportunity to commit fraud would be left open to the unscrupulous and dishonest individuals. Such laws and rules are the outgrowth of the experiences of mankind and represent the combined judgment and wisdom of the lawmakers of all time. As stated by the Oregon court in the Semler case, supra:

"Courts, with good reason, have refused to define police power for to do so might thus limit it to the detriment of the public welfare in the light of changing social and economic conditions. The law should follow closely in the wake of an advancing civilization. Regulation of professional conduct deemed unduly drastic ten years ago might well be considered reasonable under present-day conditions."

So, in relation to those vocations of life having to do with the health of individuals, such as the practice of any of the basic sciences, the sovereign state, through the exercise of its police power may enact such laws regulating and restricting the practice of such professions as the legislature in its wisdom may deem expedient, so long as such legislation is reasonable and appropriate to accomplish the legitimate purpose of the safeguarding of the public health. It was for the legislature to say whether or not it was necessary, in order to close the door against the unscrupulous practitioner, against perpetration of fraud and deception upon his patients, that all advertising except that designated in the statute be prohibited. That is the real pith of the controversy in this case. There is no claim that in itself there is anything harmful in advertising prices for dental work or displaying signs illustrating bridge work, or running stories in the newspapers, but we think it must be admitted that there are some dishonest and disreputable members of the profession who

are not willing to abide by what is commonly called the ethics of their profession, and who make use of such methods of advertising, and the unsuspecting public and over-credulous members of society, unable to distinguish the true from the false, or the honest from the dishonest, are lured to the offices or lairs of the professional charlatans, who point to their array of expensive office equipment and over-stuffed furnishings to convince their unsuspecting patients of their superiority, and use this as an excuse for "fleecing them". In order to reach this evil and attempt to correct it, in the interest of the public welfare, individual rights must give way to the greater rights of the whole people. State v. Schlenker, supra; Priest v. Whitney Loan & Trust Company, supra.

In the last analysis, when the legislature speaks through a valid exercise of the police power, it is the voice of the people speaking in defense or preservation of its own well-being, and while, under the Iowa statutes, the limitations on advertising are rigid, they are not too rigid when the purpose or aim of the law is considered. Plaintiff is not deprived of his right to practice his chosen profession. All advertising is not prohibited, and as applied to a profession, as distinguished from a trade or commercial business, considering the evil sought to be remedied, we cannot say that the limitations of the statute are arbitrary or unreasonable. We think the law bears a fair relation to matters of public health and the moral and physical welfare of the people. There is a presumption in favor of the validity of the act, and also a presumption that the legislature in enacting the same did so with a view of promoting the public welfare. The burden was on the plaintiff, and he has failed to sustain that burden. People v. Griswold, 213 N. Y. 92, 106 N. E. 929, L. R. A. 1915D, 538.

Appellant's contention that the law is ambiguous and uncertain is without foundation. The very purpose of enacting a statute prohibiting all advertising except certain definite kinds of advertising was to provide against uncertainty. Statutes of this character, containing language much more indefinite and uncertain have been upheld against the charge of uncertainty. For list of cases see annotation, 54 A. L. R. 400.

■■■ Directing our attention to the appellant's claim that the rules of the Department of Health transcend the provisions of the statute, we find the rules complained of are as follows:

628

"Rule 25. The Board of Dental Examiners *recommend* that dentists be permitted to carry or publish a professional card and to display a window or street sign at the licensee's place of business.

"Rule 26. A dentist may place on his professional card or window display a statement that he is limiting his practice. In that event the Board *recommends* that any words, other than the word 'Dentist' be confined to the following: Dentist, practice limited to Orthodontia; Dentist, practice limited to Exodontia; Dentist, practice limited to Prosthodontia; Dentist, practice limited to Peridontia; Dentist, practice limited to Radiodontia; Dentist, practice limited to Pediodontia; these being the divisions recognized by the American Dental Association.

"And, furthermore, that in the affidavit form prescribed in 2573-g2 there will be a place provided where the dentist shall make a declaration of his practice limitations if he so states on his professional card or window display.

"Rule 27. The State Board of Dental Examiners *interprets* a professional card in a newspaper to mean a card one column wide and one inch deep.

"Rule 28. The Board *interprets* the law to mean that only one outside sign or window sign be permitted, the letters of which shall not exceed six inches in height, wording to be such as set out in Rule No. 26." (Italics ours.)

A casual reading of these rules will reveal that they are in the nature of recommendations to the dental profession to aid and guide them in interpreting and following the statutory law, relating to the practice of dentistry and dental hygiene, and do not in any sense transcend the standard fixed by the statute, and can in no just sense be said to be a law in and of themselves promulgated by the State Department of Health.

The case of Goodlove v. Logan, 217 Iowa 98, 251 N. W. 39, relied upon by appellant, is not a parallel case.

Certain opinions of the attorney general in reference to the interpretation of the statute were introduced in evidence and disclose some discrepancies between the interpretation made by the attorney general and that placed upon the law by the rules of the Department of Health. These discrepancies should be reconciled, and the rules should be revised to correspond with the interpretation placed upon the law by the legal advisor of

the Department. The evidence shows that the Department of Health relies for its interpretation of the statute on the opinions of the attorney general, and in its dealings with the plaintiff has not insisted upon the recommendations and interpretations made by the Board of Dental Examiners, and approved by the Department of Health. We agree with the interpretation placed on the rules by the legal department, to the effect that the statute does not limit the size of professional cards or the height of the letters on the sign which may be used. This is a matter of taste. Likewise, the technical words in the recommendation contained in Rule 26 with reference to advertising practice limited to some specialty, may or may not be used, according to the tastes of each individual dentist. Simpler words, meaning the same thing, confined to the particular specialty to which the dentist limits his practice, could, of course, be used. It is suggested in argument that this law, and these rules would prohibit a dentist from giving notice of removal or change of location. Such interpretation of the law is not warranted. As well say he could not have his name in a telephone directory.

■■■ Appellant's final complaint that the penalty provided for violation of section 2573-g16 of the Code is so drastic, severe and unconscionable as to render the entire act unconstitutional and void, is not well founded. If the acts of the legislature fixing the standard of conduct are valid, the resulting penalty of refusal to renew the license of one who has failed to comply with the statute has been uniformly upheld by the courts, and this is the only penalty imposed by statute for unprofessional conduct, as defined by section 2573-g16 of the Code. The provisions of section 2522 relating to fine and imprisonment have no application to unprofessional conduct by way of advertising. It would be just as logical to say that a member of the profession of dentistry or medicine or any other of the basic sciences could be fined and imprisoned for incompetency in the practice of his profession.

■■■ Appellee's contention that plaintiff has no standing in a court of equity is wholly without merit. The enforcement of this law undoubtedly amounts to a serious restraint of plaintiff's prior methods of conducting a lawful vocation, and is a direct financial injury and damage to his business and if the law is unconstitutional and void, he certainly has a right to restrain its enforcement. Solberg v. Davenport, 211 Iowa 612, 232 N. W.

477; Huston v. City of Des Moines, 176 Iowa 455, 156 N. W. 883; Cook v. Davis, 218 Iowa 335, 252 N. W. 754. Surely he isn't required to take the risk of forfeiting his license and forever being deprived of practicing his profession before he may proceed in equity, as he has in this case, to challenge the constitutionality of the law. Such course is the only adequate and safe method open to the plaintiff if he desires to be assured of the right to practice his profession, and it would indeed be an unjust and arbitrary rule which would require him to first proceed to openly violate the law and thus place himself and his property rights in jeopardy in order to place himself in a position to have determined the question of the constitutionality of the statute. The cases cited and relied upon by appellee are not parallel. In all of said cases the remedy at law was adequate, and under such circumstances it was held that a suit in equity for injunction would not lie. This practice seems to be quite general. It was the procedure used in both the Oregon and Illinois cases cited with approval herein. For other cases bearing on the questions involved in this opinion reference may be had to annotations in 5 A. L. R. 94; 74 A. L. R. 323; 54 A. L. R. 400.

The decree of the trial court is affirmed.—Affirmed.

PARSONS, C. J., and DONEGAN, RICHARDS, ALBERT, STIGER, and MITCHELL, JJ., concur.