**SHERMAN et al. v. STATE BOARD OF DENTAL EXAMINERS et al.**

No. 10392.

Court of Civil Appeals of Texas. San Antonio.

April 13, 1938.

Rehearing Denied May 11, 1938.

Leonard Brown and B. W. Teagarden, both of San Antonio, for appellants.

William McCraw, Phil Overton, T. F. Morrow, and Wm. C. Davis, all of Austin, John R. Shook and J. Sam Levey, both of San Antonio, for appellees.

SMITH, Chief Justice.

This action for injunction was brought by G. W. Sherman and four others, all alleged to be duly licensed and practicing dentists in the state of Texas, to restrain the State Board of Dental Examiners, and the district attorney and sheriff of Bexar county, from enforcing certain provisions of House Bill 36, passed by the 45th Legislature, article 752b, 1938 Supp., Vernon's Penal Statutes, defining and prohibiting "unprofessional conduct" upon the part of persons engaged in the practice of dentistry. Upon a hearing the trial court sustained the general demurrer to the plaintiffs' petition and denied the injunction as prayed for. Sherman and his associates have appealed. The parties will be herein referred to as plaintiffs and defendants, respectively, as in the court below.

Section 2 of the act complained of, and embracing the specific provisions attacked in this proceeding, is as follows:

"Art. 752b. Unprofessonal conduct

"It shall be unlawful for any person, firm, or corporation to engage in or be guilty of

any unprofessional conduct in the practice of dentistry, directly or indirectly. Any 'unprofessional conduct,' as used herein, means and includes any one or more of the following acts, to ·wit:

"(a) employing 'Cappers' or 'Steerers' to solicit and/or obtain business;

"(b) obtaining any fee by fraud or misrepresentation;

"(c) employing directly or indirectly or permitting any unlicensed person to perform dental services upon any person in any room or office under his or her control;

"(d) circulate any statements as to the skill or method of practicing dentistry of any person through the means of bills, posters, circulars, cards, stereopticon slides, motion pictures, radios, newspapers, or other advertising agencies or devices;

"(e) making use of any advertising statements of a character tending to mislead or deccive the public;

"(f) advertising professional superiority or the performance of professional services in a superior manner;

"(g.) advertising prices for professional services in the practice of dentistry, or comparative values thereof;

"(h) advertising bargains, cut rates, or special values in dental services or productions with or without specifying the time they shall apply;

"(i) advertising any free dental work or free examination;

"(j) advertising to guarantee any dental services;

"(k) advertising to perform any dental operation painlessly;

"(l) publishing or circulating reports of cases or statements of patients in any news· paper, or to circulate same in any other way whatsoever;

"(m) advertising by any means, the using of any secret anesthetic, drug, formula, medicine, method, or system;

"(n) employing any person or persons to obtain, contract for, sell or solicit patronage, or making use of free publicity press agents;

"(o) advertising by means of large dis-/play signs, or glaring light signs, electriq or neon, or such signs containing as a part thereof the representation of a tooth, teeth, bridgework, plates of teeth or any portion of the human head, or using specimens of such in display, directing the attention of the public to any·such person or persons engaged in the practice of dentistry;

"(p) advertising dental plates, or restorations, or the materials used in their construction, under any fictitious, fancy, or unscientific names unapproved by the dental profession, or manufacturers of such materials and which cannot be identified by the patient;

"(q) advertising to the public any commercial dental laboratory or dental clinic;

"(r) giving a public demonstration of skill or methods· of practicing dentistry for the purpose of securing patronage;

"(s) forging, altering, or changing any diploma, license, registration certificate, transcript, or any other legal document, pertaining to the practice of dentistry, being a party thereto, or beneficiary therein, or making any false statement about or in securing such document, or being guilty of misusing the same;

"(t) using any photostat, copy, transcript, or any other representation in lieu of a diploma, license, or registration certificate as evidence of authority to practice dentistry.

"Provided, that any duly license practitioner of dentistry may publicly announce by way of newspaper or professional card that he is engaged in the practice of dentistry, giving his name, degree, office location where he is actually engaged in practice, office hours, telphone numbers and residence address; and if he limits his practice to a specialty, he may state same."

It will be observed that those affected by the act are expressly·authorized, in the concluding provision of section 2, to advertise in the manner and to the extent therein provided.

Plaintiffs' first proposition concerns the question of their right to maintain their suit, but, as that right seems not to be contested here, the question need not be discussed or decided.

In their second proposition plain-/tiffs question, by indirection, the validity of all the provisions in the statute prohibiting the specific character of advertising therein denounced. The proposition is regarded as too general to invoke a decision. It is conceded that some of the prohibitions in the statute, such as, for example, those ·which prohibit misleading advertising, are valid. A party cannot, by such a general proposition, put the burden upon an appellate court of segregating and passing upon the validity of every provision relating to the general

subject of the act assailed. It is expressly provided in the act here in question, section 9 of the act, article 752c note, that, if any provision thereof be held by the courts to be invalid, such holding shall not have the effect of invalidating the remaining provisions of the act. ' We overrule plaintiffs' second proposition.

■ In their third proposition plaintiffs assert that "That part of section 2 of said act which prohibits a dentist from advertising by means of a large display sign or glaring light signs, either electric or neon, or by signs containing as a part thereof the representation of a tooth, teeth, bridgework, plates of teeth, or any portion of the human head, or using specimens of such in display, directing the attention of the public to any such person or persons engaged in the practice of dentistry, is unconstitutional and void as violative of section 8, article 1, and section 19, article 1, of the Bill of Rights of the Constitution of the State of Texas." We overrule the proposition.

■ It is true, of course, that persons lawfully engaged in the practice of dentistry, as well as those engaged in all other lawful professions, are entitled, in their vocations, to the protection of the guarantees afforded by both State and Federal Constitutions.

■ But it is equally true that those so engaged in the profession of dentistry, as well as of medicine and surgery, and related vocations, are subject to legislative regulation. And the vocation itself being subject to regulation, so are all its incidents. 11 Am.Jur. p. 1045, § 284.

The Legislature has the regulatory power because the profession of dentistry, for example, intimately concerns the life, health, morals, and comfort and, therefore, the general welfare, of the members of the public, and, because of that relation, the state, under its inherent police power, has the right, and it is its duty, to impose such reasonable and just restrictions and regulations upon the practice of that vocation as are appropriate and necessary to protect and conserve the life, health, morals, comfort, and general welfare of the inhabitants of the state. 11 Am.Jur. p. 1044, § 284; 21 R.C.L. p. 363, § 10; Semler v. Oregon State Board, 148 Or. 50, 34 P.2d 311; Id., 294 U.S. 608, 55 S.Ct. 570, 79 L.Ed. 1086; Laughney v. Maybury, 145 Wash. 146, 259 P. 17, 54 A. L.R. 393; Thompson v. Van Lear, 77 Ark. 506, 92 S.W. 773, 5 L.R.A.,N.S., 588, 7 Ann.

Cas. 154; State Board v. McCrary, 95 Ark. 511, 130 S.W. 544, 30 L.R.A.,N.S., 783, Ann. Cas.1912A, 631; Butcher v. Maybury, D.C., 8 F.2d 155.

■ And, as the power to regulate continues after the practitioner obtains his license from the state, the license may be revoked where the holder violates proper and reasonable regulations imposed upon the profession by the Legislature. For, while the license to practice is a property right, and a valuable one at that, it is not such a vested right, in the constitutional sense, that it may not be revoked for good cause, and such revocation is not a taking of property without due process of law. 11 Am.Jur. p. 1033, § 275; 37 C.J. 168; 17 R.C.L. 474; Annotation, 2 L.R.A.,N.S., 631; Newson v. Galveston, 76 Tex. 559, 13 S.W. 368, 7 L.R.A. 797; Craven v. Bierring, 222 Iowa 613, 269 N.W. 801; State v. Clark, 79 Tex. Cr.R. 559, 187 S.W. 760; Prater v. Storey, Tex.Civ.App., 249 S.W. 871.

The specific questions presented in this appeal have not been decided by the Texas courts, but they have been passed upon by the courts of a number of other states, as well as by federal courts, including the Supreme Court of the United States. It appears that many of the states now have statutes in substantially the same form as the statutes of Texas under attack in this suit. Most of the other states have but recently legislated upon the subject, although the law has been in force a number of years in several, including Oregon, Colorado, Illinois, Tennessee, Washington, California, Arkansas, Michigan, and New York. Such laws have been upheld in apparently every state where they have been questioned. A similar law was first held invalid by the Supreme Court of the State of Colorado in Chenoweth v. Medical Examiners, 57 Colo. 74, 141 P. 132, 51 L.R.A.,N.S., 958, Ann.Cas.1915D, 1188, but that decision has since been disapproved by the same court. State v. Hollinshead, 77 Or. 473, 151 P. 710; People v. Dentist, 85 Colo. 304, 275 P. 928; Sapero v. State Board, 90 Colo. 568, 11 P.2d 555.

■ The power of the state, through its Legislature, to regulate and circumscribe the character of advertising of their professional services, equipment, and facilities, by practicing dentists, is now generally recognized and upheld. That power includes the authority to prohibit the character of advertising condemned by the statute here in question. The power does not rest, nec-

essarily, upon the theory, or assumption, that such advertising must be false, or within itself harmful in every case. The true theory is, primarily, at least, that such methods of inducing business are contrary to the now well-established and universally recognized and respected standard of ethics of an honored and useful profession, the maintenance of which will tend to insure competency in individual practitioners and minimize the influence of the charlatan and quack, who, unable to establish or maintain himself upon his own merits and virtues, must and does resort to the tricks and devices denounced by the statute, whereby practitioners in that class obtain an advantage over the large majority of the profession, whose sense of decency and propriety, and whose regard for the high standard of the ethics of the profession, prohibit them from resorting to such means of exploitation.

■ It may be that purely ethical, or esthetic considerations will not of themselves warrant legislative interference in setting up and enforcing standards of professional conduct, although the tendency among the decisions is to hold those considerations to be sufficient. 11 Am.Jur. p. 1039, § 280, and authorities cited. But those considerations certainly are proper elements of a public policy behind valid legislative acts of control and regulation; they spring from a presumed opinion and demand upon the part of the general public that such methods as those condemned by the statute here in question are unseemly and demoralizing and actually in derogation of the general welfare, and should be prohibited.

■ Such statutes are upheld upon the further ground that they are necessary to protect the weak and gullible from their own incapacity, when suffering from real or imaginary ills, to resist alluring promises of cures, guaranteed or not, and painless or not, at cheaper prices, with better facilities, more skillful treatment, and the like. For, as has been said: "it is common knowledge that frequently persons of good health are prone to imagine they are in need of treatment, and that one thus afflicted or if he is suffering from some actual bodily disease is more easily imposed upon than one who possesses a sound mind and body. 'He is inclined to grasp at shadows and pursue the wind, and is easily misled into paying money for treatment he does not need.' His venture is not like the purchase of some tangible object that may be examined and approved

before concluding a contract, but it is a matter of faith, trust, or opinion leading to treatment that must be paid for whether beneficial or not. Such persons, whether otherwise ignorant or not, are unduly susceptible to undue influence and persuasion whether the one who wielded the influence so intended it or not, and it is the design of these laws against unprofessional conduct to protect such persons and to declare, in legal effect, * * * as a matter of public policy, that all advertising of medical business which is intended or has a tendency to deceive the public or impose upon credulous or ignorant persons, and so be harmful or injurious to public morals or safety, constitutes unprofessional conduct." Laughney v. Maybury, 145 Wash. 146, 259 P. 17, 20, 54 A.L.R. 393, 399.

■ We are of the opinion that the provision, paragraph (o), § 2, of the act in question, article 752b (o), prohibiting the character of advertising there denounced, is not invalid as being in contravention of the due process and equal protection clauses of the Federal and State Constitutions, Const.U.S. Amend. 14; Const.Tex. art. 1, § 19; we hold, on the contrary, that the act is a valid and appropriate exercise of the inherent police power of the State, and is not shown to be an unreasonable restriction upon the liberty of those legitimately engaged in and licensed to practice the profession of dental surgery in this state. To the authorities already cited may be added: Craven v. Bierring, 222 Iowa 613, 269 N.W. 801; People v. People's Bank, 344 Ill. 462, 176 N.E. 901; Painless Parker v. Dental Examiners, 216 Cal. 285, 14 P.2d 67; Modern Dentists v. State Board, 216 Wis. 190, 256 N.W. 922; Rust v. State Board, 216 Wis. 127, 256 N.W. 919; Ex parte Whitley, 144 Cal. 167, 77 P. 879, 1 Ann.Cas. 13; People v. Griswold, 213 N.Y. 92, 106 N.E. 929, L.R.A.1915D, 538; Winberry v. Hallihan, 361 Ill. 121, 197 N.E. 552, 553.

The leading case, perhaps, is the Oregon case of Semler v. State Board, supra. We quote from the opinion of Chief Justice Hughes of the Supreme Court of the United States (page 572 of 55 S.Ct.) as being applicable to and decisive of the very questions raised in appellants' second proposition:

"Recognizing state power as to such matters, appellant insists that the statute in question goes too far because it prohibits advertising of the described character, although it may be truthful. He contends that the superiority he advertises exists in fact,

that by his methods he is able to offer low prices and to render a beneficial public service contributing to the comfort and happiness of a large number of persons.

"The state court defined the policy of the statute. The court said that while, in itself, there was nothing harmful in merely advertising prices for dental work or in displaying glaring signs illustrating teeth and bridge work, it could not be doubted that practitioners who were not willing to abide by the ethics of their profession often resorted to such advertising methods 'to lure the credulous and ignorant members of the public to their offices for the purpose of fleecing them.' The legislature was aiming at 'bait advertising.' 'Inducing patronage,' said the court, 'by representations of "painless dentistry," "professional superiority," "free examinations," and "guaranteed" dental work,' was, as a general rule, 'the practice of the charlatan and the quack to entice the public.'

"We do not doubt the authority of the state to estimate the baleful effects of such methods and to put a stop to them. The legislature was not dealing with traders in commodities, but with the vital interest of public health, and with a profession treating bodily ills and demanding different standards of conduct from those which are traditional in the competition of the market place. The community is concerned with the maintenance of professional standards which will insure not only competency in individual practitioners, but protection against those who would prey upon a public peculiarly susceptible to imposition through alluring promises of physical relief. And the community is concerned in providing safeguards not only against deception, but against practices which would tend to demoralize the profession by forcing its members into an unseemly rivalry which would enlarge the opportunities of the least scrupulous. What is generally called the 'ethics' of the profession is but the consensus of expert opinion as to the necessity of such standards.

"It is no answer to say, as regards appellant's claim of right to advertise his 'professional superiority' or his 'performance of professional services in a superior manner,' that he is telling the truth. In framing its policy the legislature was not bound to provide for determinations of the relative proficiency of particular practitioners. The legislature was entitled to consider the general effects of the practices which it described, and if these effects were injurious in facilitating unwarranted and misleading claims, to counteract them by a general rule even though in particular instances there might be no actual deception or misstatement."

Plaintiffs contend in their fourth proposition that "Section 6 of said act [article 752c, § 6], attempting to prohibit a dentist from maintaining more than one additional office in any town or city other than the town or city of the residence of such dentist, is unconstitutional and void, in that it violates section 20 [19], article 1, of the Bill of Rights of the Constitution of the State of Texas, in that such section deprives appellants of their liberty, property and privileges without due course of law, and also violates those provisions of the penal code which require that penal laws shall be certain and definite." Section 6 complained of in said proposition, is, simply, that "This Act shall not be intended to prohibit any duly authorized, licensed and registered dentist from maintaining one additional office in any town or city other than the town of his residence."

■■■ The proposition, and statement thereunder, are not sufficient to invoke a decision upon the validity of the act assailed. Section 6, directly attacked, does not within its own provisions restrict licensed dentists in the conduct of their vocation. The provision is permissive, rather than restrictive, and certainly does not by its own terms come under the ban of either of the constitutional guaranties invoked by plaintiffs. Plaintiffs have not shown that their liberties or properties have been jeopardized, or are about to be placed in jeopardy, by reason of section 6 of the act, or its enforcement, or threatened enforcement, by the defendants. No concrete question of law is presented in plaintiffs' fourth proposition, and we decline to pass upon the validity of section 6 of the act in response to that proposition.

In their fifth proposition plaintiffs contend that the machinery set up in the act for revocation or suspension of current licenses, under which plaintiffs and others in their class are practicing, is void, and in contravention of constitutional rights of plaintiffs. It is not deemed necessary to set out the lengthy and involved provisions of the act prescribing the procedure to be pursued by the State Board in enforcing the civil penalties prescribed by the act. It should suffice to say that those provisions substan-

tially conform to like procedure in this and other states for similar purposes, and the validity of which have been sustained by the courts. Gerard v. Smith, Tex.Civ.App., 52 S.W.2d 347; Turner v. Bennett, Tex.Civ. App., 108 S.W.2d 967; Craven v. Bierring, supra.

■ Plaintiffs question the validity of the act upon the contention that the same constitutes class legislation, because it is made applicable only to those engaged in the practice of dentistry. There is no merit in that contention. The true test is, does the act apply to all practicing dentists, alike? And this act admittedly meets that test. The Legislature was not required to encompass all professions, or cover the entire field of legislation upon the subject, within the purview of the one act, in order to avoid the ban of class legislation, or undue discrimination. Semler v. State Board, supra.

■ Nor is there any merit in plaintiffs' contention that the act offends against the constitutional guaranty of freedom of speech and of the press. The question of freedom of the press is not involved, except as a remote incident of the purpose and effect of the act. The act does not purport to bear upon or affect the right of the press to publish whatever it sees fit to print, in whatever form or language it chooses. The object and effect of the act are clearly within the inherent police power of the state, and the act will not be nullified simply because its enforcement may tend to cut off purely conjectural profits which the press might derive from the prohibited practices. It has been repeatedly, and as far as we are advised, uniformly, held that such legislation is not in contravention of the constitutional guaranty of freedom of speech and of the press. 12 C.J. 952, § 468; Semler v. State Board, supra; Craven v. Bierring, 222 Iowa 613, 269 N.W. 801, supra; Williams v. State, 85 Ark. 464, 108 S.W. 838, 26 L.R.A.,N.S., 482, 122 Am.St.Rep. 47; State v. Bair, 92 Iowa 28, 60 N.W. 486; People v. Apfelbaum, 251 Ill. 18, 95 N.E. 995; State v. McKee, 73 Conn. 18, 46 A. 409, 49 L.R.A. 542, 84 Am.St.Rep. 124; Solomon v. Cleveland, 26 Ohio App. 19, 159 N.E. 121; In re Cohen, 261 Mass. 484, 159 N.E. 495, 55 A. L.R. 1309; People ex rel. Deneen v. Smith, 200 Ill. 442, 66 N.E. 27, 93 Am.St.Rep. 206; In re Schnitzer, 33 Nev. 581, 112 P. 848, 33 L.R.A.,N.S., 941; Post Printing & Pub. Co. v. Brewster, D.C., 246 F. 321; Zinn v. State, 88 Ark. 273, 114 S.W. 227; State v. Davis, 77 W.Va. 271, 87 S.E. 262, L.R.A.

1917C, 639; State ex rel. West v. State Co., 24 Okl. 252, 103 P. 1021; Com. v. Reilly, 248 Mass. 1, 142 N.E. 915.

The judgment is affirmed.