### A. S. Newson v. The City of Galveston.

#### No. 2838.

1. **Municipal Charter.**—The city of Galveston under its charter has power to establish market houses, and to require fresh meats to be sold there, and also to forbid their sale at other places. Such power can not be fettered by contracts, but must be left free to be exercised at all times, whether in conferring or in withholding market privileges when once conferred.

2. **Same.**—One who established under authority of the city a private market and expended money in preparing and equipping it, is chargable with a knowledge at the time that the city may at any future time forbid him from continuing to keep his market at that place. The withdrawal of the privilege does not, in contemplation of law, divest the citizen of a right or deprive him of his property, and the ordinance withholding the privilege is not in restraint of trade.

Appeal from Galveston. Tried below before Hon. Wm. H. Stewart. The opinion states the case.

*Quitman Finlay, John Lovejoy,* and *Alex. Sampson,* for appellant.—
1. A court of equity will take jurisdiction as against a municipal corporation, on the same principles by which it is guided in other cases, for all injurious abuses of power and all invasions of the private rights of the citizen subjected to municipal control. 2 Dill. on Mun. Corp., sec. 908, and notes; High on Inj., secs. 783, 784.

2. The ordinance fixing the boundaries within which no private market shall be established, and fixing the rental of stalls in the public market, and prescribing a penalty for its violation, is in restraint of trade, unreasonable, tyrannical, oppressive, and void. St. Paul v. Laidler, 72 Am. Dec., 89, and note; Slaughter House Cases, 16 Wall., 36, Justice Fields' dissenting opinion; Bethune v. Hughes, 73 Am. Dec., 789; Campbell v. Alton, 85 Am. Dec., 282.

3.   The ordinance of the city fixing the limits within which it is made unlawful to establish private markets, and punishing the violation of the same by fine, amounts to the damaging and destroying of petitioner's property without compensation, and is void.   Bill of Rights, sec. 17; Const. U. S., 14th amend.

*S. W. Jones,* for appellee. — 1.   The State of Texas under its police power has the authority to establish and erect markets, and to authorize the establishment of markets, to forbid the sale or purchase of marketable articles except at designated places, and to confine the prosecution of certain trades to certain localities; and it may delegate this power to a municipal corporation.   1 Dill. on Mun. Corp., secs. 380, 141; Tied. Lim. on Police Powers, 434; Municipality v. Cutting, 4 La. Ann., 335.

2.   Being authorized by its charter to establish and erect markets and market houses; to designate, control, and regulate market places and privileges; to inspect and determine the mode of inspecting meats, etc.; to regulate the vending of fresh meats, etc.; to make such rules and regulations in relation to butchers as it might deem necessary and proper; and to pass all ordinances, rules, and regulations, not contrary to the Constitution of the State, that might be necessary for the government, peace, and good order of the city and the trade and commerce thereof, the city of Galveston had the power to fix the times and places at which fresh meats might be sold within its corporate limits, and to prohibit their sale at other times and places; and the ordinances prohibiting the establishment and conduct of private markets for such purposes within the limits therein prescribed were a proper exercise of that power.   Buffalo v. Webster, 10 Wend., 99; Bush v. Seabury, 8 Johns, 418; New Orleans v. Stafford, 27 La. Ann., 417; Wartman v. Philadelphia, 33 Pa. St., 202; Ash v. People, 11 Mich., 347; 1 Dill. on Mun. Corp., secs. 380, 384; Tied. Lim. on Police Powers, 311-13; St. Louis v. Weber, 44 Mo., 547; Winnsboro v. Sweet, 11 Rich., 551.

3.   The exercise of this power by the city is in the nature of a police regulation, and does not violate private rights or improperly restrain trade. In Re Nightingale, 11 Pick., 168; New Orleans v. Stafford, 27 La. Ann., 417; Wartman v. Philadelphia, 33 Pa. St., 202; 1 Dill., 326.

4.   Green grocers and venders of fresh meats, fish, poultry, etc., have always been held to be proper subjects for the exercise of the police powers of a State or city.   1 Dill. on Mun. Corp., sec. 384; Tied. Lim. on Police Powers, secs. 312-14.

5.   Forbidding by ordinance the establishment or conduct of private markets for the sale of fresh meats within certain limits, and punishing by fine any violation thereof, was not a taking by the city of the plaintiff's property, but was simply a legitimate regulation of the use and enjoyment of that property by him, under the police powers delegated to the city by

the State.   1 Dill. on Mun. Corp., sec. 141; New Orleans v. Stafford, 27 La. Ann., 417; Tied. Lim. on Police Powers, 313; Railway v. Louisville, 8 Bush, 415.

6.   Even had the privilege granted to the plaintiff been for an indefinite period, yet it must be held to have been given and accepted subject always to the constant exercise of the police power conferred by its charter, the exercise of which can never be bartered away by legislative enactment; but his said privilege having been for a specified period, and that period having elapsed, whatever right was conferred thereby terminated with the license.  Tied. Lim. on Police Powers, 287; Dill. on Corp., sec. 384.

STAYTON, Chief Justice.—This was a suit for injunction, instituted in the District Court of Galveston County, January 26, 1889, by A. S. Newson against the city of Galveston, in which it was sought to restrain the latter from interfering with the private market for the sale of fresh meats conducted by the former in violation of an ordinance of the city prohibiting such markets in the territory bounded by certain streets within its corporate limits.

Judge N. G. Kittrell, of the Twelfth Judicial District, granted a preliminary injunction in accordance with the prayer of the plaintiff's bill, and on February 23, 1889, this injunction was by the court, on motion of defendant, and after demurrer and sworn answer filed by it, dissolved, and the plaintiff declining to introduce any evidence in support of the allegations of his bill or to proceed further with the case, the same having been regularly called for trial on its merits, the bill was dismissed; to which rulings the plaintiff excepted and gave notice of appeal.

The facts bearing on the controversy necessary to be stated are thus correctly given in condensed form by counsel for appellees from the pleadings:

"By its charter the city of Galveston is authorized and empowered to establish and erect markets and market houses; designate, control, and regulate market places and privileges; inspect and determine the mode of inspecting meat, fish, vegetables, and all produce, and every article and thing brought therein for sale; to license, tax, and regulate merchants and all other trades and professions, occupations and callings, the taxing of which is not prohibited by the Constitution of the State; to regulate the inspection and vending of fresh meats, poultry, fish, vegetables, fruits, butter, lard, and other provisions, and the place and manner of selling fish and inspecting the same; to make such rules and regulations in relation to butchers as the city council may deem necessary and proper; and to pass all ordinances, rules, and police regulations, not contrary to the Constitution of this State, for the good government, peace, and order of the city, and the trade and commerce thereof, that may be necessary or proper to carry into effect the powers vested by its charter in the said

corporation, the city government, or any department thereof; and to enforce the observance of all such rules, ordinances, or police regulations, and punish violations thereof by fines, penalties, and imprisonment; fines being limited to $200 and imprisonment to three months.

"In pursuance of these powers the city council in 1880 passed an ordinance authorizing the establishment of private markets for the sale of fresh meats within the corporate limits upon written application to the city council for that privilege, stating the length of time and the place where such market was to be established, the time for such privilege not to be less than three nor more than twelve months, and if granted, in whole or in part, each and every person occupying such market to pay for the privilege quarterly in advance at the rate of $50 per annum; and all private markets to be governed by and stand under the ordinances, rules, and regulations of the said city, and imposing a fine or penalty of not less than $10 nor more than $50 for each day's violation of any of the provisions of said ordinance. In October, 1887, the city council amended this ordinance by providing that all market privileges theretofore granted should terminate on the first day of January, 1888, and all market privileges thereafter granted should terminate on the first day of the next succeeding January. June 18, 1888, the city council digested all ordinances of the city of a general nature, and continued in full force and effect the ordinance of 1880 as amended in October, 1887. On October 2, 1888, the city council adopted an ordinance amendatory of the revised ordinances of the city, adopted June 18, 1888, providing that from and after January 1, 1889, no private market should be established in the city of Galveston within the territory embraced between Thirteenth Street on the east and Twenty-seventh Street on the west, and Avenue K on the south and the channel of Galveston Bay on the north; and by the ordinances of the city any person violating the provisions of this ordinance is subject to a fine of $10. On February 18, 1889, the city council again amended the revised ordinances by the passage of the following: 'Hereafter it shall be unlawful for any person to establish, operate, or maintain any private market for the sale of butcher's meats within the following boundaries in the city, to-wit: Between Thirteenth Street on the east and Twenty-seventh Street on the west, and between Avenue K on the south and the channel of the bay on the north. Any person who shall violate the provisions of this article shall, on conviction, be fined $10, and each and every day any such violation shall occur shall constitute a separate offense.'

"In October, 1884, the plaintiff, A. S. Newson, made application in writing to the city council for permission to establish, under the ordinance of 1880, which was then in force, a private market in the city of Galveston for the sale of fresh meats. This application was granted by the council, and immediately thereafter the plaintiff established on Twenty-first Street,

between Market and Mechanic streets, in said city, a private market for the sale of fresh meats, fitting up the same with refrigerator and other appliances at an expense to himself of several thousand dollars, and continued unmolested to conduct such market at a profit from that time until January 1, 1889, paying to the proper officer of the city quarterly in advance the tax imposed by that ordinance for the exercise of such privilege. This private market of the plaintiff is located within the limits in which such markets are inhibited by the provisions of the ordinances of October 2, 1888, and February 18, 1889.

"Prior to January 1, 1889, the city had erected and completed within the limits defined by the ordinance of October 2, 1888, a large and commodious market house for the accommodation of the public and those engaged in vending fresh meats, etc., and containing stalls to let for such purposes at a reasonable rental fixed by the city council. No privilege to establish or conduct a private market in the city limits had been granted to the plaintiff since January 1, 1888, and the last granted to him expired December 31, 1888. In January, 1889, he tendered for the quarter commencing the first of that month, to the city official whose duty it is to collect taxes and fees for licenses, the amount imposed under the ordinance of 1880 for the privilege of conducting a private market within the city, but that officer declined to receive the same and refused to issue him further license in that behalf, and the plaintiff was then notified to desist, under the penalty of the law, from further conducting his said market for the sale of fresh meats at the said locality on Twenty-first Street, within the said prescribed limits. Notwithstanding, however, the change in the law and the refusal of the city to further grant him the privilege of conducting his said market, the plaintiff continued the same, and was in January, 1889, arrested under a warrant from the Recorder's Court of said city, upon complaint filed therein charging him with a violation of the ordinances prohibiting the establishment of private markets for the sale of fresh meats within the limits in said city prescribed by the aforementioned ordinances. The plaintiff was at the time a renter of stalls in the said market house erected by the city, and vended meats therein as well as his private market.

"The prosecution in the Recorder's Court was pending at the time of the filing of the bill and the service of the writ of injunction in this case.

"The bill charges that the plaintiff's private market having been established, at an expenditure of his moneys, in October, 1884, under permission from the city council, his right to conduct the same unmolested had become vested, and the city was without authority to interfere with him in its exercise, and the ordinances passed subsequently to October, 1884, prohibiting the establishment or conduct of private markets within the limits therein defined are null and void in so far as they affect that right; that the said ordinances are in restraint of trade; that the enforce-

ment of them would be to deprive the plaintiff of his property without due process of law; and also other matters, all of which are specifically denied in the defendant's answer."

Under the provisions of the charter empowering the city to establish market houses, designate, control, and regulate market places, and to regulate the vending of fresh meats, poultry, fish, and other things, no doubt can exist of the power of the city to establish market houses and to require fresh meats to be sold there, and also to forbid their sale at other places. Such a power is most necessary for the protection of the health of a city, and has often been recognized under charters not so clearly conferring it as does the charter of the city of Galveston. Buffalo v. Webster, 10 Wend., 100; Burk v. Seabury, 8 Johns, 420; Winsboro v. Smart, 11 Rich. L., 552; Bowling Green v. Carson, 10 Bush, 65; New Orleans v. Stafford, 27 La. Ann., 417; St. Louis v. Weber, 44 Mo., 549; Wartman v. Philadelphia, 33 Pa. St., 209; Ash v. People, 11 Mich., 351; Tied. on Police Power, 104; Dill. on Mun. Corp., 381–92.

The case of Le Claire v. City of Davenport, 13 Iowa, 210, goes much further, in that it protected a private individual in exclusive privilege to furnish market place.

Palestine v. Barnes, 50 Texas, 538, seems to have recognized the power of a municipal corporation to confer like exclusive market privileges.

We refer to the last two cases cited for illustrations of the rulings on the general question before us, but are not called upon by the facts of this case to adopt or reject them on the question of power to confer such exclusive privileges. The character of power the city exercised in authorizing meats to be sold in private markets was not such as the city could be prevented from exercising again by withdrawing the privilege whenever the public good required it.

The police power possessed by such corporations can not be fettered by contracts, but must be left free to be exercised at all times, whether in conferring or withdrawing privileges once conferred. If license tax had been paid for a year this would not deprive the city of the power to withdraw the privilege before its expiration if the public welfare demanded it. Much less would the fact that the city for a time had received the tax and granted the privilege make it incumbent on it to continue to do so.

If appellant expended money in preparing his private market place for the conduct of his business, he did so with full knowledge that the city might at any time forbid the business to be there conducted.

The city has neither divested him of a right nor deprived him of his property, nor are the ordinances complained of unlawful because in restraint of trade. He is not denied the right to sell meats, but is denied the right to sell at a particular place. This is but that regulation of his right which the charter of the city authorized it to make, and it must be

presumed that the city council in its action was prompted solely by a desire to promote the public welfare.

There is no error in the judgment, and it will be affirmed.

*Affirmed.*

Delivered March 18, 1890.