

# THE ATTORNEY GENERAL
## OF TEXAS

**GERALD C. MANN**
~~XXXXXX XXX XXXXXXXXX~~X
ATTORNEY GENERAL

**AUSTIN 11, TEXAS**

Honorable Dan W. Jackson
Criminal District Attorney
Houston, Texas

Dear Sir:

Attention: Palmer Hutcheson, Jr.

Opinion No. 1992
Re: (A) Are the restrictions on
advertising and other acts
and practices contained in
subsection (a) through (t) of
Article 752b of the Penal
Code (Acts of 1937, 45th Leg.,
p. 1346, ch. 501,) (2) valid and
constitutional?

(B) Is the proviso at the end
of Article 752b, supra, restric-
tive or merely premissive?

We have for reply your letter in which you ask the
above stated questions.

The Article in question, 752b of the Penal Code as
amended, reads as follows:

"It shall be unlawful for any person, firm,
or corporation to engage in or be guilty of any
unprofessional conduct in the practice of dentis-
try, directly or indirectly. Any 'unprofessional
conduct,' as used herein, means and includes any
one or more of the following acts, to wit:

"(a) employing 'Cappers' or 'Steerers' to
solicit and/or obtain business;

"(b) obtaining any fee by fraud or misre-
presentation;

"(c) employing directly or indirectly or
permitting any unlicensed person to perform

dental services upon any person in any room or office under his or her control;

"(d) circulate any statements as to the skill or method of practicing dentistry of any person through the means of bills, posters, circulars, cards, stereopticon slides, motion pictures, radios, newspapers, or other advertising agencies or devices;

"(e) making use of any advertising statements of a character tending to mislead or deceive the public;

"(f) advertising professional superiority or the performance of professional services in a superior manner;

"(g) advertising prices for professional services in the practice of dentistry, or comparative values thereof;

"(h) advertising bargains, cut rates, or special values in dental services or productions with or without specifying the time they shall apply;

"(i) advertising any free dental work or free examination;

"(j) advertising to guarantee any dental services;

"(k) advertising to perform any dental operation painlessly;

"(l) publishing or circulating reports of cases or statements of patients in any newspaper, or to circulate same in any other way whatsoever;

"(m) advertising by any means, the using of any secret anesthetic, drug, formula, medicine, method, or system;

"(n) employing any person or persons to obtain, contract for, sell or solicit patronage, or

making use of free publicity press agents;

"(o)  advertising by means of large display signs, or glaring light signs, electric or neon, or such signs containing as a part thereof the representation of a tooth, teeth, bridgework, plates of teeth, or any portion of the human head, or using specimens of such in display, directing the attention of the public to any such person or persons engaged in the practice of dentistry;

"(p)  advertising dental plates, or restorations, or the materials used in their construction, under any fictitious, fancy, or unscientific names unapproved by the dental profession, or manufacturers of such materials and which cannot be identified by the patient;

"(q)  advertising to the public any commercial dental laboratory or dental clinic;

"(r)  giving a public demonstration of skill or methods or practicing dentistry for the purpose of securing patronage;

"(s)  forging, altering, or changing any diploma, license, registration certificate, transcript, or any other legal document pertaining to the practice of dentistry, being a party thereto, or beneficiary therein, or making any false statement about or in securing such document, or being guilty of misusing the same;

"(t)  using any photostat, copy, transcript, or any other representation in lieu of a diploma, license, or registration certificate as evidence of authority to practice dentistry.

"Provided, that any duly licensed practitioner of dentistry may publicly announce by way of newspaper or professional card that he is engaged in the practice of dentistry, giving his name, degree, office location where he is actually engaged in the practice, office hours, telephone numbers and residence address; and if he limits his practice to a specialty, he may state same."

In order to facilitate the analysis of this question, we are going to divide it into the three following parts: first, the state's power in general to pass such regulatory acts; second, the constitutionality of the enumerated prohibited practices; third, a construction

of the proviso found at the conclusion of the Article in question.

## GENERAL POWER OF THE STATE TO PASS SUCH
## REGULATORY ACTS

It is true, of course, that persons lawfully engaged in the practice of dentistry, as well as those engaged in all other lawful professions, are entitled to the protection of the guaranties afforded by both State and Federal Constitutions. But it is equally true that those so engaged in the profession of dentistry, as well as of medicine and surgery, and related vocations, are subject to legislative regulation.

The Legislature has the regulatory power, because the profession of dentistry intimately concerns the lives, health, morals, and comforts and, therefore, the general welfare of the members of the public and because of that relationship, the State under its inherent police power has the right and it is its duty to impose such reasonable and just restrictions and regulations upon the practice of that vocation as are appropriate and necessary to protect and conserve the life, health, morals, and general welfare of the inhabitants of the State. See 11 Am. Jur. 1044, ¶ 248; 21 R.C.L. 363, p. 10; Semler v. Oregon State Board, 34 Pac. (2d) 311, 294 U.S. 608, 55 S.Ct. 570; Laughney v. Maybury, 259 Pac. 17; Thompson v. Van Lear, 92 S.W. 773; State Board v. McCrary, 130 S.W. 544. This power of the state to regulate continues after the practitioner has obtained his license from the state. It is true that a license to practice is a property right, however, it is not such a vested right in the constitutional sense that it may not be revoked for good cause and such revocation is not a taking of property without the due process of Law. See 11 Am. Jur. 1033, ¶ 275; 37 C.J. 168; 17 R.C.L. 474; Newson v. Galveston, 76 Tex. 559, 13 S.W. 368; Craven v. Bierring, 269 N.W. 801; State v. Clark, 79 Tex. Cr. T. 559, 187 S.W. 760.

For a summary of this State regulatory power, may we quote from the case of Semler v. Oregon State Board of Dental Examiners, supra. In delivering the opinion of the court, Mr. Chief Justice Hughes states the following:

"That the State may regulate the practice of dentistry, prescribing the qualifications that are reasonably necessary, and to that end may require licenses and establish supervision by an administrative board, is not open to dispute. Douglas v. Noble, 261 U.S. 165, 67 L. ed. 590, 43 S. Ct. 303; Graves v. Minnesota, 272

U. S. 425, 427, 71 L. ed. 331, 334, 47 S. Ct. 122. The
State may thus afford protection against ignorance, in-
capacity and imposition. Dent v. West Virginia, 129
U.S. 114, 122, 32 L. ed. 623, 626, 9 S. Ct. 231; Graves
v. Minnesota, supra. We have held that the State may
deny to corporations the right to practice, insisting
upon the personal obligations of individuals (State Den-
tal Examiners v. Miller, 90 Colo. 193, 8 P. (2d) 699,
287 U.S. 563, 77 L. ed. 496, 53 S. Ct. 6), and that it
may prohibit advertising that tends to mislead the pub-
lic in this respect. Dr. Bloom Dentist v. Cruise, 259
N. Y. 358, 363, 182 N. E. 16, 288 U. S. 588, 77 L. ed.
967, 53 S. Ct. 320."

### THE CONSTITUTIONALITY OF THE ENUMERATED PROHIBITED PRACTICES

From a study of the State regulatory power discussed
above, we may safely conclude that any practices involving fraud
may be prohibited by the State. The following five practices taken
from Article 752b, Penal Code, as amended, are all based on fraud:

"(b) obtaining any fee by fraud or misrepre-
sentation;

"(c) employing directly or indirectly or per-
mitting any unlicensed person to perform dental ser-
vices upon any person in any room or office under his
or her control;

"(e) making use of any advertising statements
of a character tending to mislead or deceive the pub-
lic;

"(m) advertising by any means, the using of
any secret anesthetic, drug, formula, medicine, me-
thod, or system;

"(p) advertising dental plates, or restorations,
or the materials used in their construction, under any
fictitious, fancy or unscientific names unapproved by
the dental profession, or manufacturers of such mater-
ials and which cannot be identified by the patient;

"(s) forging, altering, or changing any diploma,
license, registration certificate, transcript, or any
other legal document pertaining to the practice of

dentistry, being a party thereto, or beneficiary therein, or making any false statement about or in securing such document, or being guilty of misusing the same;

"(t) using any photostat, copy, transcript, or any other representation in lieu of a diploma, license, or registration certificate as evidence of authority to practice dentistry." (Underscoring ours)

The following group of prohibited practices, thirteen in number, are not directly based on fraud. However, our Texas courts and the Supreme Court of the United States have indicated that such regulations are reasonable. See Sherman v. State Board of Dental Examiners, 116 S.W. (2d) 843; Semler v. Oregon State Board of Dental Examiners, 79 L. ed. 1086, 294 U.S. 608.

"(a) employing 'Cappers' or 'Steerers' to solicit and/or obtain business;

"(d) circulate any statements as to the skill or method of practicing dentistry of any person through the means of bills, posters, circulars, cards, stereopticon slides, motion pictures, radios, newspapers, or other advertising agencies or devices;

"(f) advertising professional superiority or the performance of professional services in a superior manner;

"(g) advertising prices for professional services in the practice of dentistry, or comparative values thereof;

"(h) advertising bargains, cut rates, or special values in dental services or productions with or without specifying the time they shall apply;

"(i) advertising any free dental work or free examination;

"(j) advertising to guarantee any dental services;

"(k) advertising to perform any dental operation painlessly;

"(l) publishing or circulating reports of cases or

statements of patients in any newspaper, or to circulate same in any other way whatsoever;

"(n) employing any person or persons to obtain contract for, sell or solicit patronage, or making use of free publicity press agents;

"(o) advertising by means of large display signs, or glaring light signs, electric or neon, or such signs containing as a part thereof the representation of a tooth, teeth, bridgework, plates of teeth, or any portion of the human head, or using specimens of such in display, directing the attention of the public to any such person or persons engaged in the practice of dentistry;

"(q) advertising to the public any commercial dental laboratory or dental clinic;

"(r) giving a public demonstration of skill or methods or practicing dentistry for the purpose of securing patronage;"

Mr. Chief Justice Hughes, in delivering the opinion in the Semler case, supra, made the following statement, in holding constitutional an Oregon statute very similar to the one now in question. We quote at length from the opinion:

'The state court defined the policy of the statute. The court said that while, in itself, there was nothing harmful in merely advertising prices for dental work or in displaying glaring signs illustrating teeth and bridgework, it could not be doubted that practitioners who were not willing to abide by the ethics of their profession often resorted to such advertising methods 'to lure the credulous and ignorant members of the public to their offices for the purpose of fleecing them.' The legislature was aiming at 'bait advertising.' 'Inducing patronage,' said the court, 'by representations of "painless dentistry," "professional superiority," "free examinations," and "guaranteed" dental work' was as a general rule, 'the practice of the charlatan and the quack to entice the public.' (Underscoring ours)

"'We do not doubt the authority of the State to estimate the baleful effects of such methods and to put a

stop to them. The legislature was not dealing with traders in commodities, but with the vital interest of public health, and with a profession treating bodily ills and demanding different standards of conduct from those which are traditional in the competition of the market place. The community is concerned with the maintenance of professional standards which will insure not only competency in individual practitioners, but protection against those who would prey upon a public peculiarly susceptible to imposition through alluring promises of physical relief. And the community is concerned in providing safeguards not only against deception, but against practices which would tend to demoralize the profession by forcing its members into an unseemly rivalry which would enlarge the opportunities of the least scrupulous. What is generally called the 'ethics' of the profession is but the consensus of expert opinion as to the necessity of such standards.

"It is no answer to say, as regards appellant's claim of right to advertise his 'professional superiority' or his 'performance of professional services in a superior manner,' that he is telling the truth. In framing its policy the legislature was not bound to provide for determinations of the relative proficiency of particular practitioners. The legislature was entitled to consider the general effects of the practices which it described, and if these effects, were injurious in facilitating unwarranted and misleading claims, to counteract them by a general rule even though in particular instances there might be no actual deception or misstatement. (Underscoring ours) Booth v. Illinois, 184 U.S. 425, 429, 46 L. ed. 623, 626, 22 S. Ct. 425; Purity Extract & Tonic Co. v. Lynch, 226 U.S. 192, 201, 57 L. ed. 184, 187, 33 S. Ct. 44; Hebe Co. v. Shaw, 248 U. S. 297, 303, 63 L. ed. 255, 258, 39 S. Ct. 125; Pierce Oil Corp. v. Hope, 248 U.S. 498, 500, 63 L. ed. 381, 382, 39 S. Ct. 172; Euclud v. Ambler Realty Co. 272 U. S. 365, 388, 389, 71 L. ed. 303, 310, 311, 47 S. Ct. 114, 54 A.L.R. 1016."

CONSTRUCTION OF THE PROVISO FOUND
AT THE CONCLUSION OF ARTICLE 752b, PENAL CODE

The proviso in question reads as follows:

"Provided that any duly licensed practitioner of dentistry may publicly announce by way of newspaper or professional card that he is engaged in the practice of dentistry, giving his name, degree, office location where he is actually engaged in practice, office hours, telephone numbers and residence address; and if he limits his practice to a specialty, he may state same."

It has long been the custom of the medical and dental profession to permit their members to carry so-called "cards" in professional directories and to be used in announcing new or changed addresses. It would seem clear that the Legislature inserted the proviso to make certain that this long used custom was not prohibited.

In your letter you ask the following questions:

"In other words under Article 752b, supra, taken as a whole, may dentist, without enfringing the criminal laws, advertise in any manner and with as much space as he desires, so long as he does not violate one of the specific prohibitions in subsections 'a' through 't', or is his advertising limited by the proviso, to a mere statement of his name, degree, office location, etc?"

In answering this question we would first point out as stated above that apparent intention of the Legislature was to preserve a long standing customary right to the dentist and not to restrict him. Certainly since this is a criminal statute and must be strictly construed, it would seem clear that the dentist could advertise in any manner and with as much space as he desires so long as his advertising did not fall under the prohibited practices of the article in question.

We therefore respectfully advise that Article 752b, Penal Code, as amended, is valid and constitutional and the proviso at the end of said article is permissive rather than restrictive.

APPROVED JUN 7, 1940          Yours very truly

/s/ Grover Sellers          ATTORNEY GENERAL OF TEXAS
First Assistant
Attorney General

                              By

                                   Frederik B. Isely
                                        Assistant

FBI:EAW

                                   Approved:
                                   Opinion Committee
                                   By /s/ BWB
                                   Chairman