NO. 07-01-0304-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

SEPTEMBER 18, 2002
_____

BRAZORIA COUNTY, TEXAS,

Appellant

v.

BASIN CREDIT CONSULTANTS, INC. D/B/A POWERS & PARKER,

Appellee
_____

FROM THE 239TH DISTRICT COURT OF BRAZORIA COUNTY;

NO. 4082*JG98; HON. J. RAY GAYLE, III, PRESIDING
_____

Before QUINN and JOHNSON, JJ., and BOYD, SJ.[1]

Brazoria County (Brazoria) appeals from a final judgment awarding Basin Credit Consultants, Inc. d/b/a Powers & Parker (Parker) damages, interest and attorney's fees. Brazoria initially sued Parker to recover damages to County Road 59. Parker had been granted a permit by Brazoria to operate heavily loaded vehicles upon the roadway, and, in doing so, Parker allegedly damaged it. This resulted in the county revoking the permit and filing the above mentioned suit. In turn, Parker counterclaimed for breach of contract,

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. TEX. GOV'T CODE ANN. §75.002(a)(1) (Vernon Supp. 2002).

the wrongful taking of property, and "deprivation of property based on equitable estoppel."

On appeal, Brazoria argues that the trial court erred in refusing to grant the county a directed verdict on the counterclaims of Parker and in submitting issue four wherein the jury was asked to determine whether the permit was revoked "without just cause."[2] We reverse.

### Issue One — Directed Verdict

Brazoria contends, through its first issue, that it "should have been granted [a directed verdict] because the facts established as a matter of law that [it] was entitled to judgment dismissing . . . [the] counterclaim[s]." This is allegedly so because the "heavy load permit was a revocable license subject to summary revocation . . . rather than a contract." And, because the permit could be summarily revoked, Parker "was not entitled to recovery based on a contract theory of wrongful or unjust revocation . . . ." Finally, Brazoria also contends that it was entitled to a directed verdict because it revoked the permit "due to its concern for road damage and public safety." We sustain the issue.

In addressing the dispute, we first consider whether suit against Brazoria could have been founded, in theory, either upon breach of contract or revocation without just cause. And, in considering that issue, we note that there exists a distinction between a permit and franchise or contract issued by a governmental entity. The former, *i.e.*, a permit, is not a contract, *Trevino & Gonzalez Co. v. R.F. Muller Co.*, 949 S.W.2d 39, 42 (Tex. App. --San Antonio 1997, no writ), but rather a grant of authority to do that which would otherwise be unlawful. *Harris County v. Shepperd*, 156 Tex. 18, 291 S.W.2d 721, 726 (1956) *(quoting*

---

[2]To this issue, the jury answered "yes." That answer served as the basis for awarding Parker $30,000 in damages, attorney's fees, and interest.

2

*Payne v. Massey*, 145 Tex. 237, 196 S.W.2d 493 (1946)). It confers a right or power which does not exist without it. *Id.* And, whether the document constitutes a permit, as opposed to a contract or franchise, depends upon whether it affects conduct which the governmental entity is authorized to regulate via its police power. *Johnson v. City of Austin*, 674 S.W.2d 894, 897 (Tex. App.--Austin 1984, no writ) (noting that a license or permit "has the purpose of regulation under the police power").

Next, that the State has the authority to create and maintain public roads and regulate traffic thereon via its police power is clear. Furthermore, our legislature enacted statutes incident to that power restricting the weight and size of vehicles which may be operated upon public roadways. *See e.g.* TEX. TRANSP. CODE ANN. §621.101 (Vernon Supp. 2002). So too did it enact statutes vesting governmental entities with the power to free members of the traveling public from those restrictions. *See e.g.*, §623.011. And, one of those entities granted that authority is a county. *Id.* §623.018 (Vernon 1999). That is, a county may grant others permission to operate oversized and overweight vehicles on county surfaces other than state highways and public roads within the "territory of a municipality," and it does this through the issuance of a permit. *Id.* Consequently, when a county allows one to operate a vehicle over roads when the vehicle exceeds applicable weight limits, it is acting within its police power to not only regulate the usage of those roads but also to allow the recipient to do that which otherwise would be illegal. Given this, the grant of authority contemplated by §623.018 of the Texas Transportation Code likens not to a contract but to a license (or permit) as that term is described in *Johnson.*

3

Here, Parker desired to operate overweight vehicles upon County Road 59. It legally could not do so without permission from Brazoria. So, it sought and obtained that permission. In acceding to Parker's request (something the county could do under the auspices of §623.018 of the Transportation Code), the county was not only regulating the usage of the roads within its jurisdiction but also allowing Parker to do that which was otherwise illegal. Consequently, the document received by Parker did not evince a contract but rather a permit as described in *Johnson*. And, being a permit, as opposed to a contract, it did not vest Parker with contractual rights upon which a claim of breached contract could be founded. *R.F. Muller Co.*, 949 S.W.2d at 42 (recognizing that since the construction permit was not a contract, "there can be no breach of contract").

Next, authority holds that permits may be revoked by the issuing party. *Leach v. Coleman*, 188 S.W.2d 220, 225-26 (Tex. Civ. App.--Austin 1945, writ ref'd w.o.m.); *Mahaney v. City of Cisco*, 248 S.W. 420, 422-23 (Tex. Civ. App.--Fort Worth 1922, writ dism'd w.o.j.). Indeed, the power to revoke is inherent in the license or permit itself.[3] *Mahaney*, 248 S.W. at 422-23 *(quoting* 19 R. C. L. §272). Moreover, that power cannot be hindered or limited through contract. *Newson v. City of Galveston*, 76 Tex. 559, 13 S.W. 368, 369 (1890) (stating that the "police power possessed by such [municipal] corporations cannot be fettered by contracts, but must be left free to be exercised at all times, whether in conferring or withdrawing privileges once conferred"); *Mahaney*, 248 S.W. at 422-23 *(quoting* 19 R. C. L. §272). Nonetheless, in revoking a license or permit, the entity may not act capriciously, arbitrarily, or unreasonably. *Coleman*, 188 S.W.2d at

---

[3]We note that the permit at issue contained a provision stating that the county "retain[ed] the right to revoke [it] by verbal notification . . . ."

225-26; *Mahaney*, 248 S.W. at 422-23. In other words, it must have a reasonable basis for its decision. And, protecting the public welfare or good is such a basis. *See Newson*, 13 S.W. at 369 (stating that the privilege may be withdrawn "whenever the public good require[s] it"). Finally, a governmental decision made *sans* reasonable basis exposes the entity to legal action. *See Mahaney*, 248 S.W. at 423 (stating that "[w]hile the conclusions above . . . require us to affirm . . ., yet if plaintiff upon a hearing on the merits can show that the action of the city commissioners was arbitrary, unreasonable, or tyrannical and is discriminatory against the appellant, a different case would be presented than the one at bar").[4]

From the foregoing, we must conclude that Brazoria was not subject to suit founded upon breached contract. We, however, do not agree with the general proposition that the power to revoke insulated the county from all claims. Again, it may not act arbitrarily, and allegations that it did are cognizable in Texas courts. *See id.* Yet, that does not end our discussion of the first issue. Now we must assess whether Brazoria was entitled to a directed verdict on the issue of wrongful revocation.

As previously mentioned, the State clearly has the police power to regulate traffic upon public roads. That counties, such as Brazoria, also have this power in situations involving the operation of overweight and oversize vehicles upon county roads, is equally clear. *See TEX. TRANSP. CODE ANN.* §623.018(a) (Vernon 1999) (so delegating that power to counties). Nor is it disputed that the condition of County Road 59 deteriorated during the period in which Parker was allowed to drive its overweight vehicles on it. Indeed, in

---

[4]We do not address the nature of the legal action or particular remedies available. Neither topic is encompassed within the issues Brazoria presents.

5

answering question one, the jury said "yes" when asked if "Powers and Parker's operations in using the road from June 1997 until March of 1998 cause[d] damage to" that particular byway, and Parker does not contest this finding.[5] Similarly undisputed is the evidence illustrating that Brazoria believed the road to be deteriorating as Parker's vehicles passed over it. Given this and as a matter of law, it had a reasonable basis to revoke the permit, and its decision to do so could not be interpreted as unreasonable, capricious, or "without just cause."

As stated in *City of San Antonio v. Zogheib*, 129 Tex. 141, 101 S.W.2d 539 (1937), the issue is not whether the governmental entity "acted without what the jurors deemed fair, solid, and substantial cause in denying the permit . . . ." *Id*. at 542. Nor was it within the province of the jury to determine whether Brazoria was correct in attributing the deterioration to Parker's vehicles. *See id.* (stating that "it could [not] be determined by the jurors' opinion that no traffic congestion would be created by the operation of the filling station at that point"). This is so because via §623.018 of the Texas Transportation Code, the power was vested in Brazoria "and not elsewhere to determine whether a traffic hazard [was] . . . created by the . . . operation which [it] should prevent in the interest of safety or for other reasons." *Id.* So, irrespective of whether evidence appears of record "upon which reasonable minds might have differed as to the wisdom or justice . . . [in revoking] the

---

[5]We note that the jury answered "no" when asked if the "negligence," if any, of Parker was "a proximate cause of any damages . . . ." This answer does not conflict with that given in response to issue one because evidence appears of record indicating that the road was poorly constructed or maintained by Brazoria. Thus, the jury could have found that while the operation of Parker's trucks caused damage to County Road 59, the damage was not proximately caused by a breach of duty imposed upon or misconduct of Parker. And, since the answers to the two issues could be so construed, they are not fatally conflicting. *See Huber v. Ryan,* 627 S.W.2d 145, 145-46 (Tex. 1981) (holding that answers to jury issues are not fatally conflicting when they can reasonably be reconciled).

6

permit . . . there is none that [Brazoria] did not honestly believe from the facts that a hazard [was] . . . created from the operation of the [trucks] that it was [its] duty to prevent." *Id.* And, because there is no evidence which indicates that Brazoria did not honestly have such a belief, the issue regarding whether the revocation was improper should not have been submitted to the jury. *Id.* Thus, the trial court erred in refusing to grant Brazoria a directed verdict upon Parker's claim of wrongful revocation.

The judgment of the trial court is reversed to the extent that it awards Parker damages, attorney's fees, and interest against Brazoria. We also render judgment that Parker recover nothing upon its counterclaim against the county. *See* TEX. R. APP. P. 43.2(c) (stating that the court of appeals may reverse the trial court's judgment in whole or part and render the judgment that the trial court should have rendered).


Brian Quinn
Justice



Do not publish.


7